IRVING, P.J.,
for the Court:
¶ 1. This appeal arises out of a custody dispute between Trina Sullivan and Kenneth Sullivan, the natural parents of Ken-zie Sullivan. The Forrest County Chancery Court denied Trina’s petition to modify child custody. Feeling aggrieved, Trina appeals and presents several issues, which we have consolidated for clarity: (1) whether the chancery court erred in determining that a material change in circumstances did not exist, (2) whether the chancery court erred in rejecting the guardian ad litem’s recommendation without explaining its reasoning, (3) whether the chancery court erred in its analysis of the Albright[1] factors, and (4) whether the chancery court erred in allowing Kenneth’s expert witness to testify.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Trina and Kenneth were married on December 5, 2001. On December 2, 2005, the chancery court granted the couple a divorce on the ground of irreconcilable differences. The Sullivans had one minor child at the time of the divorce, Kenzie, who was born on November 6, 2002. The chancery court granted Kenneth full physical custody of Kenzie. The court granted Trina visitation every other weekend. Additionally, the court ordered Trina to pay $130 per month in child support.
¶4. Initially, Trina refused to comply with the court’s custody order and retained physical custody of Kenzie. In response, Kenneth filed a petition for writ of habeas corpus. The chancery court issued a writ ordering the return of Kenzie to Kenneth. When Trina still refused to comply, the court ordered her to be incarcerated. Eventually, Trina delivered Ken-zie to Kenneth, and the court set aside its order of incarceration on January 13, 2006.
¶ 5. In March 2006, Kenneth and Kenzie moved to Wesson, Mississippi, to live with Kenneth’s parents, Nancy and Dale Sullivan. Kenneth’s teenaged sister, Kamryn Sullivan, also lived in the home. Nancy is an assistant principal at Wesson Attendance Center, where Kenzie attends school. Dale is a retired school superintendent. Kenneth works for the University of Mississippi Medical Center.
¶ 6. In June 2007, Trina married Stephen Childress and moved to Mt. Olive, Mississippi, to live with him and his two children. Trina is a homemaker and Stephen works for AT & T. Stephen is the sole source of income for the family. Both Trina and Stephen have a history of drag abuse and have worked as confidential informants in the past.
¶ 7. On March 31, 2008, Trina filed a petition to modify custody, alleging that there had been a material change in circumstances based on Kenneth’s inability to provide a stable home environment for Kenzie and his recent arrest for a felony. However, the felony arrest resulted from an affidavit filed by Trina alleging that Kenneth had conspired to kidnap Kenzie in November 2005. Trina filed the affidavit in August 2006; however, for reasons that are not made clear in the record, Kenneth was not arrested until March 2008. Ultimately, the district attorney declined to prosecute the case.
*1197 ¶8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶9. The standard of review in child-custody cases is limited. Giannaris v. Giannaris, 960 So.2d 462, 467 (¶ 8) (Miss.2007). Thus, an appellate court will not disturb the chancery court’s findings unless such findings are manifestly wrong, clearly erroneous, or the court applied the wrong legal standard. Id.
¶ 10. “The test for a modification of child custody is: (1) whether there' has been a material change in circumstances which adversely affects the welfare of the child and (2) whether the best interest of the child requires a change of custody.” Id. at 467-68 (¶ 10) (footnote omitted) (quoting Floyd v. Floyd, 949 So.2d 26, 29 (¶ 10) (Miss.2007)). However, “[t]he best interest of the child requires that the child have some degree of stability in his or her life.” Id. at 467 (¶ 9) (citation omitted). Furthermore, the Mississippi Supreme Court has described custody changes as a “drastic legal action” and has explained that “only parental behavior that poses a clear danger to the child’s mental or emotional health can justify a custody change.” Id. (citation omitted).

1. Material Change in Circumstances

¶ 11. Trina argues that the chancery court erred when it failed to find a change in circumstances that warranted a change in custody. In support of her argument, Trina points to Kenneth’s improper sexual conduct, his propensity to drink and drive, and his acquaintance with drug dealers.
¶ 12. In October 2008, Kenneth, who was thirty-two years old at the time, began dating Hannah Thornton, a nineteen year old. The same month, Kenneth sneaked Thornton into his parents’ house and had sex with her. Kenneth testified that everyone in the household was asleep during the incident and that Kenzie never saw Thornton in the home. However, he admitted that he does not have a proper bedroom in the house; instead, he has created a make-shift bedroom on the landing at the top of the stairs using partitions. He testified that there is no door. Kenneth and Thorton ended their relationship in October 2009.
¶ 13. Kenneth also admitted to drinking and driving, although he denied ever doing so when Kenzie was in the car. However, Thornton testified that Kenneth drank in the car with her on many occasions, including a “few times” when Kenzie was in the car. Additionally, Kenzie reported to the guardian ad litem (GAL) that she had been in the car while Kenneth was drinking. Finally, Kenneth had previously been convicted of driving under the influence when he was nineteen.
¶ 14. Kenneth also admitted to being an acquaintance of Rick Harper and Jason Lee. Both Harper and Lee testified during the divorce proceedings. Trina moved in with Lee following her separation from Kenneth in 2004. Lee testified that he and Trina had engaged in sexual activity and had smoked crystal meth together on numerous occasions. In 2005, Trina moved in with Harper, who also testified that he had had sex with Trina and had used drugs with her.
¶ 15. Kenneth admitted to loaning money to Harper on one occasion following his divorce from Trina. According to Kenneth, Harper had been arrested and had asked for money to pay his bond. Kenneth could not remember the amount of the loan or the nature of the charge, but he testified that Harper never paid him *1198 back. Kenneth further testified that he had not seen Harper in three years.
¶ 16. After Trina returned Kenzie to Kenneth, he hosted a celebratory cookout for his family and friends, which Lee attended. In 2008, Lee visited the Sullivans’ home with his wife and his new baby. During the visit, Kenzie took a picture with Lee, his wife, and their baby, which Lee’s wife later posted on MySpace. According to Kenneth, Lee is no longer involved in drugs and has turned his life around. Furthermore, Kenneth testified that he has not seen Lee in a year.
¶ 17. While the test for modification generally requires a showing of an adverse impact on the child, our supreme court has held that “where a child living in a custodial environment clearly adverse to the child’s best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment.” Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996).
¶ 18. While Trina contends that Kenneth’s indiscretions warrant a change in custody, there is no evidence that Kenzie has been adversely affected by his actions. There was ample testimony at the modification hearing that Kenzie is performing well at school, is involved in numerous extracurricular activities, and is a happy, well-adjusted child. However, based on the supreme court’s holding in Riley, our inquiry does not end here. The absence of an adverse impact on Kenzie does not preclude a change in custody where her current custodial environment is nonetheless adverse to her best interests.
¶ 19. While the chancery court was troubled by Kenneth’s drinking and driving and by what it categorized as “immoral behavior,” it ultimately concluded that Trina had failed to prove a material change in circumstances that warranted a change in custody. We agree. Considering the totality of the circumstances, Kenneth’s conduct simply has not created a custodial environment that is adverse to Kenzie. Furthermore, this Court has stated on numerous occasions that “a parent’s relationships or indiscretions, standing alone, are not enough to constitute a material change in circumstances.” Self v. Lewis, 64 So.3d 578, 586 (¶ 38) (Miss.Ct.App.2011) (citing Forsythe v. Akers, 768 So.2d 943, 947 (¶ 11) (Miss.Ct.App.2000)).
¶ 20. Because Trina failed to sufficiently prove either an adverse impact on Ken-zie or that Kenneth’s conduct created an adverse custodial environment, the chancery court did not err in refusing to modify custody. This issue is without merit.

2. Guardian Ad Litem (GAL) Report

¶ 21. Trina contends that the chancery court erred by not adopting the GAL’s recommendation and by not stating its reasons for not adopting the GAL’s recommendation. Our supreme court has consistently held that “a chancellor is in no way bound by a [GAL’s] recommendations.... ” Floyd, 949 So.2d at 29 (¶ 8) (citations omitted). The GAL initially determined that a material change in circumstances did not exist, and she recommended that custody remain with Kenneth. However, after hearing the testimony at the modification hearing, the GAL modified her recommendation and determined that a material change in circumstances did exist. The GAL testified as follows:
Even though some of [Kenneth’s] conduct has not affected Kenzie, it’s poor judgment, and there’s a pattern of it since the divorce, and to me it somewhat shows an immaturity on [Kenneth’s] part that he puts his own wants and self-gratification over the safety and well- *1199 being of ... his child ..., and that concerns me.
¶22. While the GAL considered Kenneth’s actions immature and indicative of poor judgment, she admitted in her testimony that his conduct had not adversely affected Kenzie. Furthermore, the GAL was aware of Kenneth’s drinking and driving and his relationship with Thornton at the time the GAL drafted her report recommending that custody remain with Kenneth. The only incident that the GAL did not know about at the time of her report involved Kenneth’s sexual encounter with Thornton at his parents’ house. Given that our case law has never required the chancery court to defer to the GAL’s recommendation, and the GAL’s testimony that Kenneth’s conduct did not adversely affect Kenzie, the chancery court did not err in failing to adopt the GAL’s recommendation. This issue is without merit.
¶ 2B. Similarly, the chancery court did not err in failing to state its reasons for not adopting the GAL’s recommendation. Our supreme court has held that “if the [chancery] court rejects the recommendation of the [GAL], the court’s findings must include its reasons for rejecting the [GAL’s] recommendations.” Floyd, 949 So.2d at 29 (¶ 8) (citing S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1082 (¶ 18) (Miss.2000)). However, this is only required when the appointment of the GAL is required by law.[2] Id. Because appointment of the GAL was not mandatory in this case, the chancery court did not err in failing to state its reasons for rejecting the GAL’s recommendations. This issue is without merit.
3. Albright Analysis
` ¶ 24. Despite determining that Trina had failed to prove a material change in circumstances, the chancery court included an analysis of the Albright factors in its findings of fact and conclusions of law. Trina contends that the court erred in its Albright analysis. However, because a material change in circumstances did not exist, the chancery court was not obligated to analyze the Albright factors. See White v. White, 26 So.3d 842, 851 (¶ 28) (Miss.2010) (explaining that the Albright analysis is triggered only after a court finds an adverse material change in circumstances). Because we have affirmed the chancery court’s finding that a material change in circumstances did not exist, we need not address the chancery court’s Albright analysis.[3] This issue is without merit.

i. Expert Testimony

¶ 25. Trina argues that the chancery court erred in admitting the testimony of Dr. John D. Fontaine, a psychologist who evaluated Kenzie. Trina contends that the chancery court should have excluded Dr. Fontaine’s testimony because he was not designated as an expert witness during discovery.[4] Alternatively, Trina ar *1200 gues that Dr. Fontaine lacked the qualifications to as an
¶ 26. While Dr. Fontaine was not properly designated, our supreme court has previously stated that “[exclusion of evidence for a discovery violation is an extreme measure, and lower courts should exercise caution before doing so, because our courts are ‘courts of justice [and] not of form.’ ” Estate of Bolden ex rel. Bolden v. Williams, 17 So.3d 1069, 1072 (¶ 14) (Miss.2009) (quoting Caracci v. Int’l Paper Co., 699 So.2d 546, 556 (¶ 17) (Miss.1997)). Furthermore, Trina’s attorney stated at the hearing that he knew about Dr. Fon-taine and had contacted his office, but he had decided not to call Dr. Fontaine as a witness. Given that the exclusion of evidence should only be employed as a last resort and the fact that Trina’s attorney knew about Dr. Fontaine, the chancery court did not err in admitting his testimony. This issue is without merit.
¶27. Based on our review of the record, Trina objected to Dr. Fontaine’s testimony solely because he was not designated as an expert witness. She never objected on the basis that Dr. Fontaine was unqualified. Our supreme court has consistently held that “[fjailure to make a contemporaneous objection constitutes waiver of the objection and cannot be raised for the first time on appeal because the trial court is denied the opportunity to consider the issue and possibly remedy the situation.” Copeland v. Copeland, 904 So.2d 1066, 1073 (¶ 24) (Miss.2004) (citation omitted). “Furthermore, when a party makes an objection on specific grounds, it is considered a waiver regarding all other grounds.” Id. (citation omitted). As such, Trina has waived her argument on appeal regarding Dr. Fontaine’s qualifications.
¶ 28. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J. GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).

. Mississippi Code Annotated section 93-5-23 (Supp.2011) provides, in pertinent part:
The court may investigate, hear[,] and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action ..., and in such cases[,] the court shall appoint a guardian ad litem for the child ... who shall be an attorney.

. Trina also contends that the chancery court erred in refusing to allow Kenzie, who was seven years old at the time of the modification hearing, to testify. However, according to the law, Kenzie was not of sufficient age to testify as to her preference regarding custody. See Miss.Code Ann. § 93-11-65 (Supp.2011) (allowing the chancery court to consider the preference of children twelve years of age or older in custody proceedings).

.Trina did not designate her discovery requests or Kenneth’s response to her requests as part of the record on appeal. However, on *1200 the day of the modification hearing, Trina made an ore tenus motion asking the chancery court to exclude Dr. Fontaine based on Kenneth’s failure to disclose him as a witness during discovery. Trina stated that she had served interrogatories on Kenneth, requesting the names of his expert witnesses. Kenneth responded to the interrogatories and explained that he had yet to determine whom he would call as an expert but that he would supplement his response at a later date. While Kenneth apparently failed to supplement his responses, Trina stated that she had received a letter from Kenneth indicating that he might call Dr. Fontaine as an expert witness.