RUSSELL, J.,
for the Court:
¶ 1. This is an appeal from the Chancery Court of Lawrence County, Mississippi, where James David Bryant Jr. (David) sought a modification of child custody. David was granted temporary physical custody of the two minor children. David claims the chancellor erred in finding no material change in circumstances adverse to the health and well-being of the minor children; and, abused his discretion by failing to make proper findings of fact and conclusions of law on the record. Finding error, we reverse and remand.
*1148 FACTS AND PROCEDURAL HISTORY
¶ 2. David and Pamela Rena Smith Bryant (Rena) were married on November 25,1995. During the marriage, the parties had two boys. One is now age thirteen, and one is now age eight. Rena filed for divorce on November 17, 2007. David filed a motion for recusal on December 4, 2007. David and Rena were granted a divorce on the ground of irreconcilable differences in Lawrence County, Mississippi, on January 12, 2009.
¶ 3. Under the divorce decree, David and Rena agreed to joint physical and legal custody of their two minor children, with physical custody to alternate from week to week. David was ordered to pay Rena $400 per month in child support. After the divorce, Rena moved in with her uncle in Monticello, Mississippi. Months later, after the weekly exchange became burdensome, both parties agreed the minor children should reside primarily with Rena at her uncle’s home, with David having visitation with the children on alternating weekends and holidays. David’s monthly child-support payments increased to $500. An agreed order to that effect was entered on July 8, 2009.
¶ 4. Prior to the divorce, on October 10, 2008, Rena pled guilty to the charges of conspiracy and uttering forgery in the Circuit Court of Lincoln County, Mississippi. Rena was placed on non-adjudicated probation for three years in the custody of the Mississippi Department of Corrections. Because of her prior history of illegal drug use,[1] Rena was subject to random drug testing during her probation period at the request of her probation officer.
¶ 5. On January 13, 2011, during a random drug test, Rena tested positive for cocaine and opiates. David subsequently filed a petition for a modification of custody on January 18, 2011. David alleged in his petition for custody modification a material change in circumstances based on Rena’s failed drug test and her multiple one-car accidents within the two years before the filing of the modification petition. David filed a second motion to recuse on April 1, 2011.
¶ 6. Rena was admitted into a drug rehabilitation program[2] at New Life for Women Center (New Life) in Jackson, Mississippi, on February 7, 2011, as a result of the failed drug test. The children moved in with Rena’s parents in Monticello, Mississippi, while Rena was in the resident rehabilitation program. Rena was scheduled to be released in June 2011. During the program, Rena remained under twenty-four-hour staff supervision, with weekends off, which she spent with the children at her parents’ home.
¶ 7. A trial on David’s petition was held on April 14, 2011. At the beginning of trial, David again requested that the chancellor recuse himself for multiple reasons, including: the chancellor was the next-door neighbor of David and Rena prior to their divorce; the chancellor was close friends with Rena’s father; and the chancellor had previously been consulted as counsel by Rena regarding a possible divorce from David.[3] Denying the request, the chancellor stated that he had no preconceived notions about either party, and *1149 would remain impartial in spite of the connection he had with the parties.
¶ 8. The chancellor ordered a bifurcated trial, with the first portion to determine whether or not a material change in circumstances adverse to the health and well-being of the children had occurred. The chancellor declared he would only proceed to an Albright hearing after the testimony had been heard and a ruling had been made concerning a material change in circumstance.
¶ 9. During trial, Rena admitted to using opiates and cocaine on January 12, 2011, the day before she tested positive for the drugs. Rena also testified that prior to January 12, 2011, she had remained clean since 2006, before she was convicted and placed on probation.
¶ 10. During cross-examination, Rena admitted to having three one-car wrecks since the July 8, 2009 custody decree. In two of the wrecks, Rena completely totaled her car. In the third wreck, Rena ran her car through a fenced yard, crashing into a child’s trampoline.
¶ 11. One of the parties’ children testified that since Rena had been in rehab, he was having difficulty in school. Testimony from the child also showed that Rena’s absence affected the children emotionally. When questioned about his mother being in rehab, the child stated he would sometimes cry because he would worry about his mother so much. He also stated that he would worry about where he and his brother would live. Evidence also revealed that an adverse effect on the children in the custodial home had occurred even before Rena was admitted to rehab. According to the child’s testimony, when they were living with Rena’s uncle in Monticello, after Rena lost her job,[4] the children would sometimes wake up in the middle of the night looking for their mother, who would not be home. The child also stated that his younger brother would wake up crying in the middle of the night whenever he was sick, and their mother would not be home. According to the child, after he and his brother went to sleep, Rena would leave the house late at night.
¶ 12. At the close of trial, the chancellor ruled that based on the testimony and evidence presented, no material change in circumstances adverse to the interests of the children had occurred that would warrant a change in custody. Determining that no material change had occurred, the chancellor did not proceed to an Albright analysis. The chancellor’s order on April 14, 2011, provided that the July 8, 2009 custody decree was still in place, but David was to have temporary physical custody of the children until Rena was released from New Life. From this ruling, David now appeals.
STANDARD OF REVIEW
¶ 13. In cases involving child-custody modification, this Court will not disturb the findings of the chancellor unless the chancellor was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard. White v. White, 26 So.3d 342, 346 (¶ 10) (Miss.2010) (citing R.K. v. J.K., 946 So.2d 764, 772 (¶ 17) (Miss.2007)). “[W]e will not reverse where the chancellor’s findings are supported by substantial credible evidence.” Jones v. Jones, 878 So.2d 1061, 1064 (¶4) (Miss.Ct.App.2004). “With respect to issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the appellee, or at least in a *1150 manner consistent with the decree.” Id. (citing Smith v. Smith, 545 So.2d 725, 727 (Miss.1989)).
DISCUSSION
I. Material Change in Circumstances
¶ 14. The polestar consideration in all child custody cases is the best interest of the child. Albright v. Albright, 487 So.2d 1003, 1005 (Miss.1983). “A change in child custody should not be granted upon mere whim or caprice, but only when there has been a material change in circumstance, which suggests that a change of custody is in the best interest of the child.” Sturgis v. Sturgis, 792 So.2d 1020, 1023 (¶ 13) (Miss.Ct.App.2001) (citing Weigand v. Houghton, 730 So.2d 581, 585 (¶ 15) (Miss.1999)).
¶ 15. The chancellor determined there was no material change in circumstances in the custodial home that would warrant a change in custody. The record does not support such a finding. The party seeking custody modification must prove that (1) there has been a material change in circumstances since the issuance of the custody decree; (2) “the change adversely affects the child’s welfare”; and (3) “a change in custody is in the best interest of the child.” White, 26 So.3d at 349 (¶ 19) (citing Johnson v. Gray, 859 So.2d 1006, 1013 (¶ 33) (Miss.2003)).
¶ 16. Since the July 8, 2009 custody decree, Rena has tested positive for cocaine and opiates. As result of her drug use, Rena enrolled in a rehabilitation program, where she was separated from her children. At the time of trial, April 14, 2011, Rena had not yet completed the rehabilitation program. The Mississippi Supreme Court has not held a custodial parent’s rehabilitative treatment, alone, to constitute a material change in circumstances warranting a change in custody. However, when paired with additional factors that negatively impact the child, it is sufficient to constitute a material change. McSwain v. McSwain, 943 So.2d 1288, 1293 (¶ 21) (Miss.2006).
¶ 17. Here, Rena’s absence negatively impacted the children emotionally and their performance in school. Even before she began the rehabilitation program, Rena would leave the children late at night. In addition, Rena was unemployed at the time of trial, and had been in multiple serious one-car wrecks since the issuance of the custody decree. These factors, in the aggregate, are sufficient to demonstrate a material change in circumstances.
¶ 18. “[W]hen determining whether or not there has been a material change in circumstances with an adverse impact on the child, the chancellor must look at the totality of the circumstances.” White, 26 So.3d at 350 (¶ 26) (citing Stark v. Anderson, 748 So.2d 838, 843 (¶ 10) (Miss.Ct.App.2009)). In looking at the totality of the circumstances in this case, we find there exists a material change in circumstances adverse to the health and well-being of the children. Therefore, the chancellor erred in finding that no material change adverse to the welfare of the children existed, and by failing to proceed to an Albright analysis to determine if a change in custody would be in the children’s best interest.
II. Findings of Fact and Conclusions of Law
¶ 19. David also argues that the chancellor erred by failing to make proper findings of fact and conclusions of law on the record. Mississippi Rule of Civil Procedure 52(a) provides:
In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or *1151 when required by these rules, find the facts specially and state separately its conclusions of law thereon[,] and [a] judgment shall be entered accordingly.
¶ 20. During trial, before calling the first witness, David’s counsel requested that the chancellor announce his findings of fact and conclusions of law regarding his ruling. The chancellor determined that no material change in circumstances existed that would warrant a change in custody, but he did not state any specific factual findings on which his ruling was based or cite any law to support his determination.
¶ 21. In her brief, Rena argues that because the chancellor ruled that the July 8, 2009 custody decree was still in place, and David was only granted temporary physical custody while Rena was in rehab, the order was temporary, not final; and, the chancellor was not obligated to make findings of fact and conclusions or law regarding a temporary order. However, at the close of trial, the chancellor stated multiple times that his ruling was final. After discussing the nature of the ruling with Rena’s counsel, the chancellor told the parties they were free to appeal the order if they chose to do so.
¶ 22. It is true that if the chancellor makes no specific findings, we are to assume the chancellor resolved the issues in favor of the appellee. Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss.1984). However, as discussed above, Rule 52(a) requires the chancellor to make specific factual findings and legal conclusions when requested by a party to the suit. Moreover, we find there exists a material change in circumstances adverse to the interest of the children that has occurred since the issuance of the custody decree, which warrants an Albright analysis with specific factual findings. Therefore, we reverse and remand for the chancellor to provide specific findings of fact and conclusions of law using an Albright analysis.
CONCLUSION
¶ 23. The chancellor erred in finding no material change in circumstances adverse to the health and well-being of the children, and by failing to make specific findings of fact and conclusions of law at the request of one of the parties. Finding error, we reverse and remand this case for further proceedings consistent with this opinion.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF LAWRENCE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Rena tested positive on three separate occasions during the divorce proceedings.

. The record is silent regarding whether Rena’s enrollment in the rehabilitation program was voluntary or at the direction of her probation officer.

.David did note cite the chancellor's failure to recuse as error on appeal, and therefore it is not addressed in this opinion.

. The record is silent regarding when Rena lost her job. However, the record does show that Rena was unemployed at the time of trial.