ISHEE, J.,
for the Court:
¶ 1. In 2009, Darby Carson and Jesse Butler were divorced by the Monroe County Chancery Court. Butler was awarded physical custody of the couple’s only child, Aubrey, with the parties sharing joint legal custody. Subsequently, the parties entered into an agreed order as to Carson’s .visitation. Carson later filed a motion for contempt and modification of custody, to which Butler counterclaimed for contempt and modification of custody. At the conclusion of a trial on these matters, the chancery court entered a temporary order and reserved ruling on the issues. The chancery court later denied modification of custody and permanently implemented the visitation schedule set forth in the temporary order. Aggrieved, Carson now appeals.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Carson and Butler were divorced on August 6, 2009. Aubrey was born on December 16, 2008. Butler was awarded physical custody of Aubrey and both parties were awarded joint legal custody. On December 15, 2009, an agreed order was entered for modification of Carson’s visitation schedule.
¶ 3. In August 2010, Carson filed a petition for contempt and modification of custody. Carson alleged Butler was in contempt for exposing Aubrey to alcohol in violation of the agreed order. Further, *1087 Carson maintained Butler was no longer providing primary care to Aubrey, was allowing her to be in situations that violated the agreed order, and was not the person taking her to church. As a result, Carson asserted that there had been a material change in circumstances and that it would be in Aubrey’s best interest for Carson to be awarded sole legal and physical custody.
¶ 4. On January 4, 2011, Butler filed an answer and counter-complaint for contempt and modification of the divorce judgment. He argued that Carson had also exposed Aubrey to alcohol. Further, he asserted that Carson had left Aubrey in the care of others and did not care for her during her visitations. He also maintained that Carson had failed to return Aubrey at the conclusion of Carson’s visitation, resulting in his having to seek law-enforcement assistance to have Aubrey returned to him. Thus, Butler alleged that there had been a material change in circumstances and that it would be in Aubrey’s best interest for him to be awarded sole legal and physical custody.
¶ 5. A trial began on February 14, 2011. At the conclusion, a temporary order was entered outlining a new visitation schedule for the parties and resetting all matters for a hearing on September 28, 2011. Upon review, the chancellor found that there had not been a substantial and material change in circumstances that was adverse to the best interest of Aubrey. Therefore, both petitions for modification of custody were dismissed. The visitation schedule outlined in the temporary order was adopted and made a part of the judgment. Carson now appeals, arguing: (1) the chancery court erred in failing to find a material change in circumstances; and (2) the chancery court erred in failing to increase her visitation.
STANDARD OF REVIEW
¶ 6. “In cases involving child-custody modification, this Court will not disturb the findings of the chancellor unless the chancellor was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard.” Bryant v. Bryant, 105 So.3d 1146, 1149 (¶ 13) (Miss.Ct.App.2012) (citing White v. White, 26 So.3d 342, 346 (¶ 10) (Miss.2010)).
DISCUSSION
I. Custody
¶ 7. In matters of child custody, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). “The test for a modification of child custody is: (1) whether there has been a material change in circumstances which adversely affects the welfare of the child[,] and (2) whether the best interest of the child requires a change of custody.” Sullivan v. Sullivan, 102 So.3d 1194, 1197 (¶ 10) (Miss.Ct.App.2012) (citation omitted). In determining whether a material change in circumstances has occurred, the totality of the circumstances must be considered by the chancellor. Cantin v. Cantin, 78 So.3d 943, 948 (¶ 15) (Miss.Ct.App.2012) (citation omitted). “[OJnly parental behavior that poses a clear danger to the child’s mental or emotional health can justify a custody change.” Sullivan, 102 So.3d at 1197 (¶ 10) (citation omitted).
¶ 8. Carson argues that Butler’s romantic relationships alone caused a material change in circumstances. She contends that, in the less than three-year period since the couple’s divorce, Butler was romantically involved with at least four different women and had been engaged on two occasions. She expresses concern for the character of the women and the impact they had on Aubrey.
*1088 ¶ 9. There is no evidence in the record that Butler’s romantic relationships had a negative influence on Aubrey. While the chancellor expressed concern about Butler’s romantic relationships, Butler also testified that he believed it would be in the best interest of Aubrey to reconsider those relationships and not expose her to certain individuals. Further, it is well settled that “a parent’s relationships or indiscretions, standing alone, are not enough to constitute a material change in circumstances.” Id. at 1198 (¶ 19) (citation omitted).
¶ 10. Carson maintains that even if Butler’s romantic relationships alone were insufficient, the totality of his actions demonstrated a material change in circumstances. She contends that, due to Butler’s schedule, Aubrey spends the majority of her time in a daycare facility or with Butler’s relatives. She also worries about Butler’s having parties and drinking with friends in his home. Carson argues that this conduct, coupled with his questionable romantic interests, presented a material change in circumstances.
¶ 11. While Carson contends that Butler’s actions produced a material change, there is no evidence that any changes had an adverse impact on Aubrey. Carson testified that Butler was a good father who loved Aubrey. She also stated that Aubrey was a very smart girl who had an established routine and was progressing well. At the time of the hearing, Butler had remarried and had a new baby. He testified that he was no longer having parties or drinking with his friends at his home.
¶ 12. The chancellor determined that Carson failed to meet her burden of proving that a material change in circumstances had occurred that adversely affected Aubrey’s well-being. The chancellor stated that “[t]here have been some changes, but they have not been harmful to the well-being and best interest of Aubrey.” It is evident that Butler has created a stable home life for Aubrey. She also has a new half-sibling that she needs to bond with.
¶ 13. We find that the chancellor considered all the evidence presented at trial in determining that there was not a material change in circumstances that had an adverse effect on Aubrey’s well-being. We also find that there is sufficient evidence to support the chancellor’s findings. As such, the chancellor did not abuse his discretion in refusing to modify custody. Accordingly, this issue is without merit.
II. Visitation
¶ 14. “Visitation is a matter within the chancellor’s sound discretion.” Tidmore v. Tidmore, 114 So.3d 753, 763 (¶ 35) (Miss.Ct.App.2013) (citation omitted). “The chancellor is charged with fashioning a visitation schedule that is in the best interests of the childf], and the chancellor’s visitation decision is afforded great deference by this Court.” Id.
¶ 15. Carson argues the current visitation schedule does not allow her adequate time with Aubrey and does not consider the best interest of Aubrey. Carson maintains that Butler requires her to give up time in later visitations if she requests more time during a visitation, including holidays and birthdays. Further, she asserts that Butler is not able to care for Aubrey during the week or sometimes on the weekends due to his work schedule. Carson contends that increasing her visitation rights would benefit Aubrey and bolster cooperation among the parties.
¶ 16. Carson received visitation on alternating weekends of each month, each Tuesday and Thursday for approximately four to five hours, and alternating weeks during the summer. Carson was also *1089 awarded visitation for her birthday, Mother’s Day, half of Aubrey’s Christmas vacation, and half of Aubrey’s spring break. Further, Carson was granted additional visitation as may be mutually agreed upon by the parties. This Court has found that “minimum liberal visitation should include two weekends a month during the school year and a five-week period during the-summer.” Marshall v. Harris, 981 So.2d 345, 350 (¶ 23) (Miss.Ct.App.2008) (citation omitted).
¶ 17. Carson was awarded more than the standard, liberal visitation. Therefore, we cannot find that the chancellor abused his discretion in awarding visitation to Carson. Accordingly, this issue is also without merit. We affirm the chancellor’s judgment.
¶ 18. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.