# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00848-COA

**HALEY STUCKEY**                                                                      **APPELLANT**

**v.**

**THOMAS STUCKEY**                                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/2020 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS SR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN S. GRANT IV |
| ATTORNEY FOR APPELLEE: | MATTHEW STEPHEN LOTT |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 06/21/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    In October 2014, the Jackson County Chancery Court granted Thomas and Haley Stuckey a divorce based on irreconcilable differences. The chancellor adopted the parties' written agreement for custody and property settlement, granted sole physical custody of the minor child to Haley, and granted joint legal custody of the child to both parties. Subsequently in 2018, Thomas sought modification of custody. Finding Thomas had met his burden of proving a material change in circumstances, the chancellor granted the motion.

¶2.    Haley now appeals from the chancellor's judgment, arguing that the chancellor erred by (1) granting sole physical custody of the child to Thomas; (2) requiring her to pay child support; and (3) requiring her to submit to quarterly drug tests. Finding no reversible error,

we affirm the chancellor's judgment.

## FACTS AND PROCEDURAL HISTORY

¶3. Thomas and Haley were married on June 6, 2009. They had one child, S.S., before they separated on July 17, 2013.[1] On July 24, 2013, Haley filed for a divorce from Thomas on the statutory ground of irreconcilable differences. On July 16, 2014, Thomas filed his answer and counter-claim for divorce. Thomas alleged that he was entitled to a divorce on the ground of habitual cruel and inhuman treatment. Alternatively, Thomas requested a divorce based on irreconcilable differences.

¶4. In October 2014, the parties agreed to divorce based on irreconcilable differences. The chancellor adopted the parties' written agreement for custody and property settlement, granted sole physical custody of S.S. to Haley, and granted joint legal custody of the child to both parties.

¶5. In October 2017, Thomas filed a complaint for contempt, modification of custody, child support, visitation, and other relief. Thomas asserted in his complaint that material changes in circumstances that were adverse to S.S. existed, including: (1) Haley was suspected of prescription drug abuse; (2) Haley was cohabiting with her new fiancé, Adair Steelman, who was still married to another woman; (3) Steelman was potentially an alcoholic with a violent temper; (4) Haley was abusing alcohol; and (5) S.S. had numerous school absences and tardies. The parties ultimately resolved the matter, and in January 2018, the chancellor entered a final judgment reflecting such. Haley retained sole physical custody of

---

[1] We use initials to protect the identity of the minor child.

2

S.S., and the parties shared joint legal custody. Thomas received additional visitation, and his child support payments were reduced from $1,031 per month to $850 per month.

¶6. In June 2018, Thomas filed another petition for contempt, modification of custody, child support, visitation, and other relief. Thomas again alleged that Haley was abusing drugs and was mentally and emotionally unstable. Thomas also alleged that Steelman—a married man who was potentially an alcoholic with a violent temper—had "angry outbursts" in the presence of S.S. In July 2018, the chancellor appointed Kimber Roten as the guardian ad litem (GAL). The chancellor also ordered both parties to submit to drug and alcohol testing and set a hearing for July 18, 2018. In the interim, Haley tested positive for suboxone, an opioid withdrawal drug. She also admitted to the GAL that she previously had purchased drugs from friends and family without a prescription. At the hearing on July 18, Haley's attorney informed the court that she (the attorney) had a doctor's appointment that conflicted and that she did not want to proceed with the hearing without a court reporter.

¶7. The next day, July 19, 2018, Thomas requested that the chancellor grant an ex parte emergency hearing. The chancellor entered an emergency temporary custody order without notice to Haley, which granted Thomas' request for emergency temporary physical custody of S.S. The chancellor set the matter for a hearing on August 17, 2018.

¶8. Shortly after, Haley filed a motion to dismiss or, in the alternative, to dissolve the ex parte emergency order. On August 6, 2018, the chancellor granted Haley's motion to dissolve the emergency ex parte order and reinstated the previous provisions of the divorce decree and final judgment.

3

¶9. On August 22, 2018, the chancellor held a temporary hearing. Haley had tested positive for a prescription medicine that she had not been prescribed. After questioning by the chancellor, Haley admitted to consuming someone else's Lortab. The chancellor awarded Thomas temporary physical custody and terminated all child support payments. Haley was awarded visitation.

¶10. On May 21, 2019, Thomas filed a motion to suspend visitation because Haley failed to disclose her living arrangements and take the court-ordered drug tests. The chancellor suspended Haley's visitation after Thomas and the GAL expressed concern over Haley's erratic behavior. The chancellor further noted that Haley did not have a working phone number, and she failed to provide her work schedule or report for drug testing as ordered by the court.

¶11. The trial was held on October 9, 2019. The chancellor entered another temporary order that "maintained" physical and legal custody with Thomas and visitation with Haley. On July 2, 2020, the chancellor entered his findings of fact and conclusions of law as the final judgment, which awarded sole physical custody of S.S. to Thomas, visitation to Haley, and required Haley to pay child support and submit to quarterly drug tests.

¶12. Haley now appeals from the chancellor's judgment, arguing that the chancellor erred by (1) granting sole physical custody of S.S. to Thomas; (2) requiring her to pay child support; and (3) requiring her to submit to quarterly drug tests.

**STANDARD OF REVIEW**

¶13. "The scope of review in domestic cases is limited by the substantial evidence/manifest

4

error rule. This Court will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard." *Stewart v. Stewart*, 309 So. 3d 44, 68 (¶68) (Miss. Ct. App. 2020) (citation omitted) (quoting *Lee v. Lee*, 154 So. 3d 904, 906 (¶5) (Miss. Ct. App. 2014)). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic-relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Id.* (quoting *Dickinson v. Dickinson*, 293 So. 3d 322, 326 (¶5) (Miss. Ct. App. 2020)). "When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings." *Id.* (quoting *Mercier v. Mercier*, 717 So. 2d 304, 306 (¶8) (Miss. 1998)). The chancellor's "interpretation and application of the law" is reviewed de novo. *Jones v. Jones*, 332 So. 3d 365, 371 (¶12) (Miss. Ct. App. 2021) (citing *Smith v. Smith*, 318 So. 3d 484, 491 (¶18) (Miss. Ct. App. 2021)).

## DISCUSSION

### I.    Modification of Child Custody

¶14.    Haley challenges the chancellor's modification of custody. Haley claims that Thomas failed to prove a material change in circumstances that adversely affected S.S. She also claims that the evidence failed to support certain factual findings made by the chancellor and that the chancellor erred in his *Albright* analysis when determining whether custody modification was in S.S.'s best interest.[2]

---

[2] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

## A.  Adverse Material Change in Circumstances

¶15.   "A modification of custody requires the noncustodial parent to prove: (1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Stewart*, 309 So. 3d at 83 (¶126) (quoting *Powell v. Powell*, 976 So. 2d 358, 361 (¶11) (Miss. Ct. App. 2008)). In determining whether a material change in circumstances has occurred, the chancery court "must consider the totality of the circumstances." *Id*. "Even though under the totality of the circumstances a change has occurred, the court must separately and affirmatively determine that this change is one which adversely affects the children." *Id*. (quoting *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997)). "Any change in custody must be predicated on the conduct of the custodial parent that poses a danger to the mental or emotional health of the child." *Id*. (quoting *Sullivan v. Beason*, 37 So. 3d 706, 708 (¶8) (Miss. Ct. App. 2010)). Furthermore, "the party seeking the modification of custody bears the burden of proving by a preponderance of the evidence that a material change in circumstances has occurred in the custodial home." *Croney v. Solangi*, 328 So. 3d 749, 755 (¶17) (Miss. Ct. App. 2021) (quoting *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003)). Our supreme court observed that "[a]bove all, in modification cases, as in original awards of custody, we never depart from our polestar consideration: the best interest and welfare of the child." *Stewart*, 309 So. 3d at 82 (¶127) (quoting *Riley v. Doerner*, 677 So. 2d 740, 744 (Miss. 1996)). The court further explained:

> The test we have devised for custody modification need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from

rendering a decision appropriate to the facts of an individual case. In particular, it should not thwart the chancellor from transferring custody of a child from one parent to another when, in the chancellor's judgment, the child's welfare would be best served by such transfer.

*Id*. (citations and internal quotation marks omitted) (quoting *Riley*, 677 So. 2d at 745).

¶16. Substantial deference is given to a chancellor's findings, as the chancellor "has the ultimate discretion to weigh the evidence the way [he] sees fit in determining where the child's best interest lies." *Id*. (quoting *O'Briant v. O'Briant*, 99 So. 3d 802, 806-07 (¶19) (Miss. Ct. App. 2012)).

¶17. Haley argues that the chancellor applied an erroneous legal standard when he did not "separately and affirmatively determine" that any "change is one which adversely affects the child." *Giannaris v. Giannaris*, 960 So. 2d 462, 469 (¶12) (Miss. 2007). In support of her argument, Haley relies on *Butler v. Mozingo*, 287 So. 3d 980, 984 (¶15) (Miss. Ct. App. 2019), and *Giannaris*, 960 So. 2d at 469 (¶12). In *Butler* and *Giannaris*, the courts reversed and rendered chancellors' custody modifications for failing to separately and affirmatively determine that the material circumstances had any adverse effect on the children. *Giannaris*, 960 So. 2d at 469 (¶¶12-13); *Butler*, 287 So. 3d at 984-85 (¶17). Unlike those cases, the chancellor here found a material change in circumstances that adversely effected S.S. The chancellor stated:

> The material and substantial changes in circumstance include: [S.S.'s] school attendance while in Haley's custody; Haley's positive drug test for prescription medication(s) that was not prescribed to her; the arguing between Haley and Adair Steelman and Adair's excessive alcohol use which was witnessed by [S.S.]. A material change in circumstances adverse to the child exists, the court moves to the *Albright* factors and determination.

7

¶18. After considering the parties' testimony, the chancellor determined that the totality of the circumstances showed a material change in circumstances at Haley's home since the most recent custody decree, which proved to be adverse to S.S. In finding such a change, the chancellor relied on testimony regarding S.S.'s school attendance record while in Haley's custody, Haley's positive drug test for unprescribed prescription medication, Haley's and Steelman's arguments, and evidence of Steelman's excessive alcohol use. Notably, testimony showed that S.S. hid on several occasions when Steelman would have angry outbursts. Further, since moving in with Thomas, all of S.S.'s stomach issues had resolved. As we have previously stated, "[t]he chancellor, by [his] presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of these witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Jones*, 332 So. 3d at 372 (¶17) (quoting *Munday v. McLendon*, 287 So. 3d 303, 310 (¶28) (Miss. Ct. App. 2019)).

¶19. To the extent that Haley takes issue with the length of the chancellor's "separate and affirmative determination," she fails to cite any authority to show that the chancellor was "manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard." *Stewart*, 309 So. 3d at 68 (¶69); *see also Webb v. DeSoto County*, 843 So. 2d 682, 685 (¶10) (Miss. 2003) (The "[f]ailure to cite legal authority in support of an issue is a procedural bar on appeal.").

¶20. Thomas presented evidence that after the parties' divorce, Haley began a serious relationship with a then-married man named Steelman, who had pled guilty to a DUI

conviction, and S.S. was present during Steelman's excessive alcohol use and temper. Thomas showed that S.S. had missed a significant amount of school days, and that since moving her health issues had resolved. The chancellor concluded that "a material change in circumstances adverse to [S.S.] exist[ed][.]" We conclude the record contains sufficient evidentiary support for the chancellor's findings. Further, in viewing the totality of the circumstances presented, we cannot say the chancellor abused his discretion or manifestly erred in determining that an adverse material change in circumstances had occurred in the custodial home with regard to S.S. Accordingly, we find this assignment of error to be without merit.

### B.    *Albright* Analysis

¶21.    After finding that a material adverse change had occurred, the chancellor considered the parties' evidence regarding the *Albright* factors.

¶22.    "[T]he polestar consideration in child custody cases is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. To meet this goal, courts evaluate the following factors introduced in *Albright*:

> (1) The age, sex, and health of the child; (2) The continuity of care prior to the separation; (3)The parenting skills of each parent; (4) The willingness and capacity to provide primary child care; (5) The employment of the parents and the responsibilities of that employment; (6) The physical and mental health and age of the parents; (7) The emotional ties of the parent and the child; (8) The moral fitness of each parent; (9) The home, school, and community record of the child; (10) The preference of the child; (11) The stability of the home environment; and (12) The other factors relevant to the parent-child relationship.

*Wooten v. Wooten*, 333 So. 3d 610, 616 (¶15) (Miss. Ct. App. 2022) (citing *Albright*, 437

So. 2d at 1005).

¶23. "The *Albright* factors are intended to ensure that the chancellor follows a process that considers all facts relevant to the child's best interest." *Baumann v. Baumann*, 304 So. 3d 175, 179 (¶13) (Miss. Ct. App. 2020) (citing *Vassar v. Vassar*, 228 So. 3d 367, 375 (¶27) (Miss. Ct. App. 2017)). However, "an *Albright* analysis is not a mathematical formula." *Bingham v. Johnson*, 322 So. 3d 948, 952 (¶19) (Miss. Ct. App. 2021) (citing *Lee v Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001)). While all the *Albright* factors are essential, "the chancellor has the ultimate discretion to weigh the evidence the way [he] sees fit." *Id*. (citing *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)). "We give deference to the weight that the chancellor assigns to each *Albright* factor." *Baumann*, 304 So. 3d at 179 (¶14) (citing *Smith v. Smith*, 206 So. 3d 502, 513 (¶24) (Miss. 2016)). "This Court cannot re-weigh the evidence and must defer to the chancellor's findings of facts, including [his] decision regarding the evidence's weight and credibility." *Id*. (citing *Hall v. Hall*, 134 So. 3d 822, 828 (¶21) (Miss. Ct. App. 2014)). We may not substitute our judgment for the chancellor's. *Brewer v. Brewer*, 919 So. 2d 135, 141 (¶23) (Miss. Ct. App. 2005). Rather, we must decide if substantial evidence supports the ruling. *Id*.

¶24. In conducting his *Albright* analysis, the chancellor found that the following factors favored Thomas: (1) continuity of care; (2) parenting skills; (3) physical and mental health and age of the parents; (4) moral fitness; (5) stability of the home environment; and (6) home, school and community record. The chancellor found the other factors to be neutral.

¶25. On appeal, Haley takes issue with eight of the twelve *Albright* factors. However, the

gist of her argument on appeal is that the chancellor applied an incorrect legal standard. According to Haley, the chancellor's ruling should have favored her because she allegedly was the only party to present proof on the *Albright* factors. In particular, she maintains the chancellor improperly found that the following factors did not favor her after she presented "unrebutted *Albright* proof": (1) age, sex, and health of the child; (2) continuity of care; (3) parenting skills; (4) capacity to provide primary child care continuity of care; (5) age and health of the parents; (6) emotional ties of the parent and child; (7) moral fitness; and (8) home, school, and community record.[3]

¶26.    In analyzing the *Albright* factors, the chancellor acknowledged that while S.S.'s academic performance had not suffered significantly since the divorce, the child had accumulated an increased number of school tardies and absences. Haley testified that several tardies and absences were due to S.S.'s stomach issues. The chancellor addressed that S.S.'s stomach problems developed while S.S. lived with Haley and attributed the resolution of her stomach problems to the temporary change in physical custody to Thomas. The chancellor reiterated much of the evidence considered in his finding that an adverse material change had occurred. He also considered and expressed concern regarding (1) Haley's co-parenting abilities since she kept S.S. from Thomas for a significant period while S.S. was in her custody; (2) Haley's failure to pay her portion of S.S.'s extracurricular expenses or child support; (3) Haley's discussion of the case with S.S.; (4) Haley's cohabitation with a married man; (5) Haley's various changes in addresses; and (6) Haley's admitted drug use and

_____

[3] Because Haley does not address each factor individually, we also decline to address the chancellor's specific findings as to each *Albright* factor in detail.

11

sporadic and irregular employment.

¶27. We find that substantial credible evidence supported the chancellor's findings as to these factors. We recognized that "[t]he chancellor sits as fact-finder and [that] his conclusions regarding witness credibility and what weight and worth to assign to the testimony of the various witnesses are entitled to substantial deference." *Stewart*, 309 So. 3d at 89 (¶149). Finding no manifest error or abuse of discretion in the chancellor's determination that a custody modification was in S.S.'s best interests, we affirm the chancellor's grant of sole physical custody of S.S. to Thomas.

## II. Modification of Child Support

¶28. After modifying child custody and awarding Thomas physical custody of S.S., the chancellor ordered Haley to pay $613.50 per month in child support. He further ordered Haley to pay retroactive child support during the ten-month temporary period of physical custody with Thomas, to be paid in installments of $100 per month. Haley claims that since custody should not have been modified, no child support should have been awarded. Further, she asserts that at the trial held on October 9, 2019, Thomas failed to request an award of child support, and there was no testimony or evidence regarding her current income or ability to pay child support. On appeal, Haley asserts that the chancellor relied on a prior Rule 8.05 financial statement, *see* UCCR 8.05, that had been admitted at an earlier temporary hearing. She specifically contends that the chancellor erred by relying on the Rule 8.05 financial statement without receiving testimony regarding it from the parties.

¶29. "A chancery court has discretion in determining an award of child support." *Gunter*

12

*v. Gunter*, 281 So. 3d 283, 285 (¶8) (Miss. Ct. App. 2019) (citing *Harden v. Scarborough*, 240 So. 3d 1246, 1255 (¶26) (Miss. Ct. App. 2018)). "The award of child support is a matter within the discretion of the chancery court, and it will not be reversed unless the chancery court was manifestly wrong in its finding of fact or manifestly abused its discretion." *Jefferson v. Jefferson*, 327 So. 3d 1085, 1087 (¶11) (Miss. Ct. App. 2021) (quoting *Best v. Oliver*, 296 So. 3d 140, 142 (¶7) (Miss. Ct. App. 2020)). "The determination of the amount of support needed must be made by a chancellor who hears all the facts, views the witnesses, and is informed at trial of the circumstances of the parties and particularly the circumstances of the child." *Id*. "The process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id*.

¶30.    Rule 8.05 requires "each party in every domestic case involving economic issues and/or property division" to provide a "detailed written statement of actual income and expenses and assets and liabilities." *Speights v. Speights*, 270 So. 3d 968, 974 (¶22) (Miss. Ct. App. 2018). "It is vital to the effective administration of justice in the domestic relations arena that chancellors undertake this task while in possession of accurate financial information." *Id*. (quoting *Trim v. Trim*, 33 So. 3d 471, 478 (¶16) (Miss. 2010)).

¶31.    In October 2019, Thomas submitted an updated Rule 8.05 financial statement, which was admitted into evidence. Haley did not submit an updated Rule 8.05 financial statement at that time. However, at a hearing held in August 2018, both parties' Rule 8.05 financial statements were admitted into evidence. Therefore, both parties' Rule 8.05 financial

13

statements are in the record. There was documentation and evidence justifying the court's award of child support.

¶32.     "[O]ur supreme court has also held that because child support is given strictly for the benefit and protection of the child[,] when physical custody is changed and a child comes to live with the parent who was previously ordered to pay child support, there was no logical reason for the child support payments to continue." *Braswell v. Braswell*, 336 So. 3d 1121, 1132 (¶39) (Miss. Ct. App. 2021) (internal quotation mark omitted) (quoting *Frazier v. Burnett*, 767 So. 2d 263, 267 (¶8) (Miss. Ct. App. 2000)).

¶33.     The chancellor modified custody, granting Thomas sole physical custody of S.S. Therefore, the chancellor did not err in relieving Thomas of his child support obligation. Furthermore, Haley's Rule 8.05 financial statement reported a monthly net income of $4,382. The chancellor ordered Haley to pay $613.50, fourteen percent of her adjusted gross income as reflected by her Rule 8.05 financial statement and in accordance with the statutory guidelines. *See* Miss. Code Ann. § 43-19-101(1) (Rev. 2015) (establishing a rebuttable presumption that fourteen percent of the payor's adjusted gross income should be awarded for the support of one child).

¶34.     Haley makes arguments to contest the child support award, but this Court finds they are without merit. While Haley asserts that Thomas failed to request an award of child support, the record reflects that Thomas did request child support in several pleadings he filed. This Court "will not find an abuse of discretion when the required support [is] equal to the amount that is presumptively correct under the child-support guidelines." *Wooten*, 333

14

So. 3d at 618-19 (¶30) (quoting *Gunter*, 281 So. 3d at 285 (¶8)). Accordingly, the chancellor did not err in requiring Haley to pay child support in the amount of $613.50 per month.

### III. Drug Tests

¶35.    Finally, Haley claims, without citing any legal authority, that the chancellor erred by ordering her to permanently submit to drug testing as a condition to her visitation.

¶36.    "Visitation is a matter within the chancellor's sound discretion." *Thomas v. Thomas*, 281 So. 3d 1191, 1204 (¶41) (Miss. Ct. App. 2019) (quoting *Carson v. Butler*, 168 So. 3d 1085, 1088 (¶14) (Miss. Ct. App. 2013)). "The chancellor is charged with fashioning a visitation schedule that is in the best interests of the children, and the chancellor's visitation decision is afforded great deference by this Court." *Id*. Generally, "visitation with the noncustodial parent should be liberal rather than restricted." *Id*. We have previously explained

> [e]xcept in unusual circumstances, a noncustodial parent is entitled to unrestricted standard or liberal visitation. Standard visitation includes two weekends a month until Sunday afternoon and at least five weeks of summer visitation plus some holiday visitation. Awarding less is an abuse of discretion unless there is concrete proof of actual harm to a child. Appropriate visitation restrictions often relate to abusive behavior, drug or alcohol abuse, or mental illness.

*Id*. (citations and internal quotation marks omitted) (quoting *Michael v. Smith*, 237 So. 3d 183, 189-90 (¶26) (Miss. Ct. App. 2018)).

¶37.    Haley primarily argues that the chancellor should not have required "quarterly drug screens," especially after she submitted five negative drug tests. The chancellor found that quarterly drug tests were an "appropriate visitation restriction," and we agree. While the

15

record shows Haley passed several drug tests after previously testing positive, she admittedly had taken unprescribed prescription narcotics in the past, and her alleged prescription drug abuse was a serious matter of contention at the proceedings. We find that there is substantial evidence to support the chancellor's factual finding. This issue is without merit.

## CONCLUSION

¶38. Finding no reversible error, the judgment is affirmed.

¶39. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**