GRIFFIS, P.J.,
for the court:
¶ 1. Brandy Denmark Powe and Jasen Denmark were granted an irreconcilable-differences divorce on August 20, 2004. They had two children, Caden and Abigail, during their marriage. In their divorce, they agreed that they would share joint legal custody, and Brandy would have primary physical custody of the children.
¶ 2. Jasen filed his first motion to modify custody on August 25, 2005. The chancellor denied the motion by order dated January 19, 2007. The chancellor’s order held that Jasen had failed to prove a material change in circumstances had occurred. However, the chancellor did find that Ja-sen had a substantial increase in his income that warranted an increase in his child support to $614 a month.
¶ 3. On February 12, 2008, Jasen filed his second motion for modification of custody. He asked the chancellor to grant him custody, grant Brandy supervised visitation, and order Brandy to pay child support. The chancellor appointed Steve Hedrick to serve as the children’s guardian ad litem.
¶ 4. After several hearings, the chancellor entered her findings of fact and conclusions of law on July 12, 2011. At the end, the chancellor stated that this ruling shall serve as a final judgment. The chancellor granted Jasen the relief he requested. Ja-sen was given physical custody of the children, and Brandy was granted visitation rights and ordered to pay child support. The chancellor also held Brandy in contempt for her failure to pay her portion of the children’s medical expenses.
¶ 5. The standard for a modification of child custody is well settled. In Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003), the Mississippi Supreme Court held:
In a case disputing child custody, the chancellor’s findings will not be reversed *681 unless manifestly wrong [or] clearly erroneous, or the proper legal standard was not applied. The burden of proof is on the movant to show by a preponderance of the evidence that a material change in circumstances has occurred in the custodial home.
In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child’s welfare; and (3) that the child’s best interests mandate a change of custody.
In considering whether there has been such a change in circumstances, the totality of the circumstances should be considered. Even though under the totality of the circumstances a change has occurred, the court must separately and affirmatively determine that this change is one which adversely affects the children.
Furthermore, it is well settled that the polestar consideration in any child custody matter is the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
(Internal citations omitted).
¶ 6. In practice, this is a three-step process. First, the chancellor must find that a material change of circumstances has occurred in the custodial home. Second, the chancellor must find that the change adversely affected the child(ren). If the chancellor does not find both a material change of circumstances and an adverse effect, the inquiry should end and the motion should be denied. If both are found, the chancellor should then move to the best-interest analysis. This requires the chancellor consider the Albright factors.
¶ 7. In this appeal, Brandy challenges the chancellor’s finding of a material change of circumstances and adverse effect. Brandy does not argue that the chancellor was in error in the Albright analysis. As a result, we only consider whether the chancellor was in error in her decision that found a material change of circumstances adversely affected the children.
¶ 8. In her findings of fact and conclusions of law, the chancellor found a material change in circumstances had occurred. The chancellor noted Brandy’s multiple residential changes, the children’s repeated illnesses that required medical treatment, the children’s exposure to the maternal grandfather’s alcohol consumption, the fact that the grandfather drove while impaired with Caden in the vehicle, and the children’s exposure to cigarette smoke. The chancellor also concluded that these material changes had an adverse impact on the children that was manifested by Caden’s failing grades and the repeated illnesses of both children, which required medical attention that was usually paid for by Jasen.
¶ 9. Jasen testified that he had a two-year associate degree in electronics and instrumentation and was employed by Performance Contract. Jasen and his wife, Amanda, had just finished building a new home and had previously lived in a trailer on the same site.
¶ 10. Jasen testified about the children’s medical conditions. Jasen complained that the children were consistently sick when they came to him. Caden needed ear surgery, and in January 2009, Jasen and Brandy met with a doctor to discuss the surgery. They were scheduled to come back the next day for surgery. But Brandy did not bring Caden for the surgery. Instead, Brandy took Caden to another doctor in Laurel, Mississippi. That doctor did not perform the surgery. Jasen *682 then called the original doctor back and set up another appointment. Jasen testified he informed Brandy of when the surgery would be performed. The surgery occurred during spring break, in 2009, while Caden was in Jasen’s custody. Brandy did not attend the surgery.
¶ 11. Jasen testified that Brandy was responsible for half of the children’s medical expenses. Jasen testified he told Brandy of the amount she owed for medical expenses, and she had not paid him. The medical bills were admitted into evidence.
¶ 12. Jasen testified that he had trouble with Brandy’s various residential moves. Jasen also objected to Joe Reid, Brandy’s husband, living in the house with the children. Jasen also testified that the children often wore ill-fitting clothes and smelled like cigarette smoke. Jasen further stated that Theresa Denmark, Brandy’s mother, usually brings the children to visitation.
¶ 13. Theresa testified that she is a sixth-grade teacher. She testified that Ca-deris grades were below average when he was in first grade. Theresa would go to Caderis school to tutor him. During the two weeks that she tutored Caden, his grades improved. Brandy called a school official and complained. Theresa was then informed she could not go to the school to tutor Caden, and she stopped. Theresa also testified that her husband drank every once in a while but not in front of the children.
¶ 14. Angela Vanderford, Caderis teacher for the 2008-2009 school year, testified that Caden was sick quite a bit. She testified that Caderis health problems improved after the surgery, but Caden was struggling academically. Angela also testified that Theresa’s tutoring sessions helped Caden, and his grades really improved.
¶ 15. Brandy testified she had lived at four different residences. She testified that she also lived at her mother’s house on occasion. Brandy testified that she made about nine moves. Her current home has four rooms, and Caden and Abigail have their own room.
¶ 16. Brandy also testified about her employment history. Between 2007 and 2010, Brandy would clean houses until she got a job at Pinebelt. She quit working at Pinebelt to become a homemaker.
¶ 17. Brandy testified that Caden and Abigail currently have grades in school that are A’s and B’s. She said that she, Joe, and sometimes his oldest son Kyle help Caden with math homework.
¶ 18. Brandy admitted that her father drinks on a daily basis. She testified he does not do it a whole lot around them, and he is not constantly drunk. She also testified Joe gets along with her children. Brandy testified that Joe and her father both smoke and admitted the children’s clothes smelled of cigarette smoke.
¶ 19. Brandy testified that she takes the children to the doctor whenever she cannot get them better. She testified that she had never refused to take the children to the doctor when they were sick. She said that, whenever Jasen sends medicine, she gives them the medicine according to the dosage on the label.
¶ 20. Brandy testified her house in not unclean, and she has never left her children unsupervised while they were in her mother’s yard. She testified that there is nothing wrong with her physical or mental health. Brandy testified the children are active and like to play outside. Brandy testified she did not think either she or Jasen is a better parent than the other.
¶ 21. Kermit Morris testified that he saw Brandy’s father drive Caden to football practice and he was intoxicated.
*683 ¶ 22. Hedrick, the guardian ad litem, testified about his findings. Hedrick stated that an analysis of the Albright factors may strongly favor Jasen. However, he questioned whether there was an adverse condition that would trigger that analysis. Hedrick testified that Brandy’s current situation overcame the history of instability, because she and Joe seemed to be legitimately buying and fixing up the house.
¶28. To support her finding that a material change in circumstances existed, the chancellor cited the following evidence: (1) Brandy’s numerous residential changes, (2) the children’s repeated illnesses that required medical treatment, (3) the children’s exposure to the maternal grandfather’s alcohol consumption, (4) the fact that the grandfather drove while impaired with Caden in the vehicle, and (5) the children’s exposure to cigarette smoke. The chancellor found that Brandy’s instability had an adverse impact on the children. The chancellor found that the adverse effect manifested itself in the form of Caden’s failing grades and the repeated illnesses of both children that required medical treatment that was paid for by Jasen on most occasions.
¶ 24. Brandy argues that the chancellor’s factual findings differed from the testimony presented at trial, but the record indicates that Brandy admitted that she had changed residences approximately nine times. The children’s medical records indicated that the children, especially Caden, have required medical treatment for various ailments. Brandy testified that Joe Reid and her father both smoke and admitted the children’s clothes smelled of cigarette smoke. Kermit also testified he witnessed the maternal grandfather driving Caden while he was intoxicated. Ca-den’s teacher testified that his grades had dropped to an almost failing level and were very poor. Further, while it is difficult to assess the children’s medical history, the guardian ad litem testified that the children had received somewhat more than normal medical treatment. The chancellor relied upon substantial credible evidence to support her decision that there was a material change of circumstances that adversely affected the children.
¶ 25. Brandy also argues that the guardian ad litem had doubts as to whether there was a material change in circumstances that adversely affected the children. The guardian ad litem’s testimony certainly seems to conflict with the chancellor’s decision. However, decision as to whether there was a material change in circumstances that adversely affected the children was a decision for the chancellor, not the guardian ad litem. The chancellor was “in no way bound by a [guardian ad litem]’s recommendations.” Sullivan v. Sullivan, 102 So.3d 1194, 1198 (¶ 21) (Miss.Ct.App.2012) (citation omitted).
¶ 26. Having reviewed the evidence presented, we cannot say that the chancellor was manifestly wrong or clearly erroneous, or failed to apply the proper legal standard. For these reasons, we find no error and affirm the chancellor’s judgment.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF GREENE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.