## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2013-CA-01907-COA

**NATHAN ROBINSON**                                                          **APPELLANT**

v.

**KATHRYN ROBINSON AND BILL BAILEY**                            **APPELLEES**

DATE OF JUDGMENT:                  10/08/2013
TRIAL JUDGE:                             HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:   LEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        JOHN A. FERRELL
ATTORNEYS FOR APPELLEES:       ANTHONY RHETT WISE
                                             EDWIN HUGHES PRIEST
NATURE OF THE CASE:               CIVIL - CUSTODY
TRIAL COURT DISPOSITION:         DENIED MODIFICATION OF CHILD
                                             CUSTODY
DISPOSITION:                           AFFIRMED: 02/10/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Nathan Robinson appeals the chancellor's judgment that denied his petition to modify

child custody.  We find no error and affirm.

### FACTS

¶2.     Nathan and Kathryn Robinson married on January 17, 2004.  Their child, Bailey, was

born on July 7, 2004.  During her pregnancy with Bailey, Kathryn was diagnosed with

Hodgkin's lymphoma.  Shortly after this diagnosis and the birth of Bailey, Kathryn and

Nathan separated.  Kathryn lived with her parents, Bill and Donna Bailey, pending the

divorce.

¶3. On May 3, 2005, Nathan and Kathryn were divorced on the ground of irreconcilable differences. Knowing of Kathryn's medical condition and that she received assistance caring for Bailey from her parents, Nathan agreed that Kathryn should have full custody of Bailey. Their agreement was reduced to writing, and the chancellor entered a final judgment that awarded Kathryn custody of Bailey and granted Nathan visitation with Bailey every other weekend.

¶4. After the divorce, Kathryn moved into her own place and continued to receive help in caring for Bailey from her parents while she was going through cancer treatments. Kathryn's chemotherapy required that she be quarantined for about a week every three months. During this time, Bailey would stay with Bill and Donna.

¶5. Due to chemotherapy, Kathryn developed nerve damage in her hands – neuropathy. Because of her neuropathy, Kathryn could not and still cannot drive. She hopes to recover to be able to transport Bailey to school and other activities. In the meantime, unable to drive, she received help from her parents to transport Bailey. Often, the easiest solution, because of Kathryn's condition, was to let Bailey sleep at Bill and Donna's house on school nights, so they could take Bailey to school. Bailey would sleep at Kathryn's house on her weekends and during the summer.

¶6. In 2009, Nathan filed a petition to modify child custody. He cited Kathryn's poor health and alleged that she failed to exercise her parental rights. The chancellor found that Kathryn's health condition existed at the time of divorce and that she did exercise her custodial rights.

¶7. On June 6, 2012, Nathan filed a complaint for modification against Kathryn and her

2

father, Bill Bailey.[1]  To support his complaint, Nathan claims that Kathryn is in poor health and unable to care for Bailey.  He also alleged:

> [Nathan] is now married, has a nice home in which to raise his child[,] and it is in the child's best interest, based on a totality of the circumstances, for him to be allowed to have custody of his child at this time since the custodial parent is unable to perform those duties.  To continue to deny him custody of his child is tantamount to allowing custody to be given to a third party without requisite findings under applicable law that [Nathan] has abandoned the child, is morally unfit[,] or is otherwise physically or mentally unfit to have custody, none of which is the case.

¶8.    After a hearing, on October 8, 2013, the chancellor entered a detailed, fifteen-page opinion and final judgment.  The chancellor denied Nathan's request for a modification of custody and denied all other relief requested.  It is from this judgment that Nathan now appeals.

## STANDARD OF REVIEW

¶9.    "In domestic relations cases, [the appellate court's] scope of review is limited by the substantial evidence/manifest error rule."  *Samples v. Davis*, 904 So. 2d 1061, 1063-64 (¶9) (Miss. 2004) (citing *Jundoosing v. Jundoosing*, 826 So. 2d 85, 88 (¶10) (Miss. 2002)).  This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or applied an incorrect legal standard.  *Id*. at 1064 (¶9).

## ANALYSIS

_____

[1] Nathan's complaint for modification also named Kathryn's father and Bailey's maternal grandfather, Bill Bailey. Bailey to him.  The chancellor did not make any findings directly related to Bill, but clearly denied all claims for relief, which would include the claims Nathan made against Bill.  On appeal, Nathan argues for no relief against Bill.  As a result, Nathan's claims against Bill are not addressed in this opinion.

¶10. "In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." *Denmark v. Denmark*, 118 So. 3d 679, 681 (¶5) (Miss. Ct. App. 2013). "[T]he totality of the circumstances should be considered." *Id*. "Even though under the totality of the circumstances a change has occurred, the court must separately and affirmatively determine that this change is one which adversely affects the children." *Id*. "Furthermore, it is well settled that the polestar consideration in any child custody matter is the best interest and welfare of the child." *Id*. (citing *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)).

¶11. In her substantial/material-change-of-circumstances analysis, the chancellor found Kathryn's situation to be similar to the mother with medical problems in *Robbins v. Robbins*, 40 So. 3d 637 (Miss. Ct. App. 2010). There, this Court held that, "[b]ecause [the mother's] health issues were in existence prior to the divorce and the husband was aware of them, there ha[d] been no material change in circumstances." *Id*. at 640 (¶9).

¶12. The evidence indicated that Kathryn's health drastically improved in 2009. Her cancer went into remission in 2010. Nevertheless, she continued to experience serious health issues. In February 2013, Kathryn had heart surgery to repair a damaged valve. Then, in June 2013, she had surgery to remove her gallbladder.

¶13. Once Kathryn's cancer went into remission in 2010, she spent almost every day with Bailey. On school days, Kathryn sees Bailey every day of the week for around three hours a day. Kathryn attends all of Bailey's activities and goes to church with Bailey on

Wednesday nights. On her weekends, Kathryn spends all of her time with Bailey.

¶14. On Nathan's weekends, he is responsible for Bailey. He will work for around five hours on Saturdays. On some occasions, he works for a small amount of time on Sunday. Of the four nights a month Nathan keeps Bailey, Bailey is left for one night at his parent's home. When Nathan worked on the weekends, Bailey would spend time with Nathan's wife, Marsha Robinson, and Marsha's child. Nathan and Marsha have one child together, who was born in 2011.

¶15. Marsha testified that she thought Bailey is "not a normal nine-year[-]old." When Marsha would be doing housework, she considered it was odd that Bailey would want to be near her. Marsha would have to tell her to go do something so that Bailey would leave her. Bailey would also ask Marsha permission to use the restroom. Marsha thought that this also made Bailey not "normal."

¶16. When Bailey spends the night at Kathryn's parent's house, all Bailey does there is sleep and get ready for school. Bailey's homework is done at Kathryn's home with Kathryn, and Bailey plays with the kids in Kathryn's neighborhood. A neighbor testified that she is very impressed with Bailey's behavior when she plays with her daughter. Also, the neighbor said that Kathryn is very involved. Another witness testified that Kathryn and Bailey are often seen together at birthday parties, recitals, cheer, and dance.

¶17. The evidence also indicated that Kathryn makes all parenting decisions, and she did not delegate these decisions to her parents. Kathryn decided what church Bailey attends and attends with her. Kathryn also makes the doctor appointments and goes with Bailey. When Kathryn cannot make it to activities because of her medical condition, her parents assist

5

Kathryn in the same capacity as they did at the time of original child-custody decree. Lastly, Bailey is making all A's, and Nathan agrees that Bailey is an excellent student.

¶18. Nathan argued that, because Kathryn's health has improved since 2009, there was no need for Bailey to spend the night at the grandparents for transportation to and from school. He asserts that Kathryn's decision to allow Bailey to spend the night at her parent's house consistently on school nights to transport Bailey to and from school was a failure to exercise her custodial rights and obligations.

¶19. Nathan claims that the facts here are similar to *McBride v. Cook*, 858 So. 2d 160 (Miss. Ct. App. 2003). In *McBride*, the mother, after the divorce, left her child with the maternal grandparents for substantial amounts of time to act as a caregiver to a man she ultimately married. *Id*. at 162 (¶4). There, the Court held that a "total surrender of parental control by the custodial parent to third parties may reasonably be viewed by the chancellor as a material variation from the custodial arrangement contemplated at the time of the divorce." *Id*. at 163 (¶6).

¶20. We find that Kathryn's situation differs from the choices the mother made post-divorce in *McBride*. There, it was not known at the time of the custody decree that the mother would leave her daughter for substantial amounts of time to be a caregiver for her future husband. In contrast, Nathan knew of Kathryn's medical condition and that she received assistance from her parents at the issuance of child custody.

¶21. Accordingly, we find that the chancellor's opinion was supported by substantial evidence. The chancellor did not abuse her discretion, was not manifestly wrong or clearly erroneous, and did not apply an erroneous legal standard. Therefore, we find no error and

6

affirm the chancellor's judgment that denied the complaint for modification.

¶22. **THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR , JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**