# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00871-COA

**JAIME C. PARRISH**                                                                          **APPELLANT**

**v.**

**PAUL R. PARRISH**                                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2016 |
| TRIAL JUDGE: | HON. JOHN ANDREW HATCHER |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RICHARD SHANE MCLAUGHLIN |
| ATTORNEY FOR APPELLEE: | JOHN A. FERRELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/31/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.    Paul and Jaime Parrish consented to a divorce on the ground of irreconcilable differences and submitted to the Alcorn County Chancery Court the determination and distribution of the marital estate and Jaime's alimony request. In this appeal, we must decide whether the chancellor erred when he (1) classified the marital home as Paul's partially separate property, (2) classified Paul's retirement account as separate property, and (3) declined to award Jaime alimony. Finding no abuse of discretion, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Paul and Jaime were married in 2007 and separated in 2014. They continued to live in the same home until they were officially divorced in 2016. When they married, Paul was

fifty-four and Jaime was forty-nine years old. They met at the United States Postal Service (USPS), where they both worked as mail carriers. Paul and Jaime had no children together, but each had adult children from prior relationships. Additionally, Jaime had custody of her minor grandson by her daughter from a previous marriage.

¶3. During the marriage, Paul and Jaime lived together in a home that Paul owned for approximately twenty-eight years prior to the marriage. In April 2009, Paul executed a warranty deed conveying the home and real property to himself and Jaime in joint tenancy with rights of survivorship. Jaime and Paul remodeled the home together during the marriage. The chancellor found, and the parties generally agree, that the home was in terrible condition at the time Jaime moved in. Both parties paid for and contributed labor toward numerous improvements to the home during the marriage. Throughout the marriage, Jaime invested about $50,000 from an inheritance and her own earnings into remodeling and repairing the marital home. Both parties claimed in their Uniform Chancery Court Rule 8.05 financial statements that the home was worth $100,000.

¶4. The chancellor found that "[Paul] brought into this marriage the marital home, and it was lien free, and for that, the Court is giving the Plaintiff a $25,000.00 credit off the $100,000.00 value thereof in its equitable distribution and considering that portion as non-marital." As a result, the chancellor valued the home in the marital estate at $75,000, rather than the parties' agreed valuation of $100,000. Additionally, the chancellor classified Paul's retirement account as separate property, and declined to award Jaime alimony. Jaime

now appeals.

## STANDARD OF REVIEW

¶5.     "This Court employs a limited standard of review of property division and distribution in divorce cases." *Sims v. Sims*, 169 So. 3d 937, 940 (¶10) (Miss. Ct. App. 2014) (quoting *Bowen v. Bowen*, 982 So. 2d 385, 393 (¶32) (Miss. 2008)). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Stroh v. Stroh*, 221 So. 3d 399, 406 (¶17) (Miss. Ct. App. 2017) (quoting *Mabus v. Mabus*, 890 So. 2d 806, 819 (¶53) (Miss. 2003)). When reviewing issues of law, our standard is de novo. *Id*. (citing *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009)).

¶6.     "The chancellor's distribution of the marital assets will be affirmed as long as 'it is supported by substantial credible evidence.'" *Sims*, 169 So. 3d at 940 (¶10) (quoting *Bowen*, 982 So. 2d at 394 (¶32)). "In addition, 'alimony awards are within the chancellor's discretion and will not be reversed by the Court on appeal absent manifest error or an abuse of discretion.'" *Id*. (quoting *Cosentino v. Cosentino*, 912 So. 2d 1130, 1132 (¶8) (Miss. Ct. App. 2005)).

## DISCUSSION

¶7.     Jaime contends that the chancellor misclassified the marital home as Paul's partially separate property and that the misclassification caused an inequitable property distribution. She also argues that the chancellor erred by classifying Paul's retirement account as his

separate property, also thereby excluding it from the equitable distribution.

¶8.     "When conducting a property division in a divorce case, the chancellor first must classify each asset as marital or nonmarital." *Carney v. Carney*, 201 So. 3d 432, 440 (¶27) (Miss. 2016). "Then, the chancellor must equitably divide the marital assets in accordance with the factors specified in *Ferguson v. Ferguson*." *Id*. (citing *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994)). "It is well settled that 'an equitable division of property does not necessarily mean an equal division of property.'" *Id*. (quoting *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994)).

## I.     Marital Home

¶9.     In the final judgment of divorce, the chancellor stated the following:

> In its equitable distribution hereafter, the Court gives credit to [Paul] for his initial contribution of the marital property of one-fourth (1/4) the value thereof, being $25,000.00, classifying same as nonmarital, but otherwise fully commingled to be marital property in the valued amount of $75,000.00[.]

Throughout the final judgment, the chancellor repeatedly referred to the marital home as "the marital property." The chancellor listed the parties' assets and classified the home as "marital," however, in a parenthetical noted "(non-marital $25,000.00)." Though the parties both valued the home at $100,000, the chancellor valued the home at $75,000. Thus, only $75,000 was subject to equitable distribution.

¶10.    Under the family-use doctrine, separate property may convert to marital property. *Rhodes v. Rhodes*, 52 So. 3d 430, 438 (¶25) (Miss. Ct. App. 2011). In fact, this "doctrine will almost always apply to the family home." *Id*. at (¶26). Here, the chancellor seemingly

classified the marital home as partially separate property and partially marital property in order to arrive at an equitable distribution. The home should have been classified as marital property, and the parties' agreed valuation of $100,000 should have been subject to equitable distribution. While the chancellor is well within his discretion to award a greater interest in the marital home to Paul, this is accomplished through equitable distribution in accordance with the *Ferguson* factors—not by classifying the home as Paul's partially separate property. "However, we will not reverse the chancellor's judgment because of this possible error in classification. Where the overall division is fair, an error in classification does not warrant reversal." *Kimbrough v. Kimbrough*, 76 So. 3d 715, 721 (¶27) (Miss. Ct. App. 2011). In regard to the division of the home, Paul received a 62.5 percent interest in the home, and Jaime received a 37.5 percent interest in the home. Aside from the home, the chancellor equally divided the remainder of the marital estate. Notwithstanding the possible misclassification of the home, the division is fair—especially given Paul's longstanding ownership of the home prior to the marriage. Again, equitable distribution does not mean equal division, and the chancellor was within his discretion to award Paul a greater equitable interest in the home.

## II. Retirement Accounts

¶11. Jaime argues the chancellor also erred by classifying Paul's retirement account, valued at $99,976.96, as his separate property, thereby excluding it from the equitable distribution. Jaime also owned several retirement accounts totaling $79,000, which the chancellor also

5

classified as nonmarital. In the final judgment, the chancellor stated the following in regard to the parties' retirement accounts:

> The Court has looked at the retirement and savings of both parties, which were instituted prior to the marriage of the parties, as non[]marital.
>
> . . . .
>
> Each party had retirement and savings plans brought to the marriage, and they have been kept separately, and as such, the Court is deeming them non[]marital.

¶12.    Retirement income acquired and accumulated during the marriage is marital property. *Gregg v. Gregg*, 31 So. 3d 1277, 1281 (¶16) (Miss. Ct. App. 2010). "The party seeking to exclude an item from the marital estate bears the burden of establishing its separate character." *Cork v. Cork*, 811 So. 2d 427, 430 (¶13) (Miss. Ct. App. 2001). Here, there was no evidence—by either Paul or Jaime—of the premarital value of their respective retirement accounts. In accordance with our law, Paul and Jaime's retirement savings generated during the marriage were marital property subject to equitable distribution. Nevertheless, the chancellor's property distribution should be upheld where the overall division is fair. *Kimbrough*, 76 So. 3d at 721 (¶27).

¶13.    In this case, both Paul's and Jaime's individual retirement accounts were through their employer, USPS, and instituted prior to the marriage. The chancellor allocated the separate retirement accounts of both Paul and Jaime as nonmarital, noting that they were instituted prior to the marriage and maintained separately, and taking into account the amount of the retirement accounts and the relatively short length of the marriage. Given the fairness of the

6

property division as a whole, we cannot find that the chancellor abused his discretion in allocating to Paul and Jaime their individual retirement accounts as nonmarital.

¶14.    "In reviewing a chancellor's judgment, this Court does not conduct a *Ferguson* analysis anew, but reviews the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion." *Phillips v. Phillips*, 904 So. 2d 999, 1001 (¶8) (Miss. 2004).  Here, the chancellor went through the *Ferguson* factors in detail and arrived at an equitable division notwithstanding the possible misclassifications.  Again, "we will not reverse the chancellor's judgment because of this possible error in classification.  Where the overall division is fair, an error in classification does not warrant reversal." *Kimbrough*, 76 So. 3d at 721 (¶27).  We find that the overall division is fair and that the chancellor did not abuse his discretion.  This issue is without merit.

### III.    Alimony

¶15.    Jaime argues that the chancellor erred by declining to award alimony and failing to conduct an on-the-record *Armstrong*[1] analysis.  "Whether to award alimony and the amount of alimony are within the discretion of the chancellor." *Riley v. Riley*, 846 So. 2d 282, 285 (¶10) (Miss. Ct. App. 2003) (citation omitted).  "The chancellor's decision will not be reversed on appeal unless he was manifestly in error in his finding of fact or abused his discretion." *Id*.

¶16.    "Alimony should be considered only if, after the parties['] assets are equitably

---

[1] *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993).

divided, there are not 'sufficient assets to provide for both parties' and one party is left with 'a deficit.'" *Stroh*, 221 So. 3d at 412 (¶43) (quoting *Carter v. Carter*, 98 So. 3d 1109, 1112 (¶8) (Miss. Ct. App. 2012)). Where "there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." *Dykes v. Dykes*, 191 So. 3d 1287, 1291 (¶24) (Miss. Ct. App. 2016) (quoting *Lauro v. Lauro*, 847 So. 2d 843, 848 (¶13) (Miss. 2003)).

¶17. Following the equitable distribution, the chancellor determined that there were sufficient assets to adequately provide for both parties, and that Jaime did not suffer a deficit. Thus, alimony was inappropriate, and the chancellor was not required to conduct an *Armstrong* analysis. This finding is supported by substantial credible evidence, including Jaime's ability to earn a living, her salary, and the relatively short length of the marriage. The evidence also showed that at the time of the divorce, Paul was sixty-three years old, eligible to retire, and, during the pendency of the litigation, experienced serious health problems, and underwent heart surgery. Jaime testified that she had some back issues but otherwise hoped she could continue to work as a mail carrier. Accordingly, the chancellor did not abuse his discretion by declining to award alimony.

¶18. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**