# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01691-COA

EDWARD WILLIAM SPEIGHTS III                    APPELLANT

v.

KIMBERLY DANIELS SPEIGHTS                    APPELLEE

DATE OF JUDGMENT:          10/04/2016
TRIAL JUDGE:               HON. GERALD MARION MARTIN
COURT FROM WHICH APPEALED: JEFFERSON DAVIS COUNTY CHANCERY
                           COURT
ATTORNEY FOR APPELLANT:    RENEE M. PORTER
ATTORNEY FOR APPELLEE:     S. CHRISTOPHER FARRIS
NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS
DISPOSITION:               AFFIRMED IN PART; REVERSED AND
                           REMANDED IN PART: 09/18/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**BARNES, J., FOR THE COURT:**

¶1.     Edward Speights ("Trey") appeals the judgment of the Chancery Court of Jefferson Davis County, which granted Kimberly Speights a divorce on the ground of habitual drunkenness and divided the marital property. On appeal, Trey claims the chancery court erred in failing to make findings of fact and conclusions of law on the divorce, as well as allowing Trey's parents "to act as his de facto attorneys" for the division of marital assets at trial, when Trey failed to appear. Trey also argues the chancery court erred in failing to order the parties to submit a Uniform Chancery Court Rule 8.05 financial disclosure form. Regarding the property division, Trey contends the chancery court failed to make a

distinction between marital and non-marital property, and failed to support its decision with findings of fact under the *Ferguson*[1] factors.

¶2.     We affirm the grant of divorce on the ground of habitual drunkenness. We also find no error in the role of Trey's parents at the trial. However, we reverse and remand on the issue of property division, in order for the chancery court to make findings of fact under *Ferguson*, and for the parties to file Rule 8.05 financial disclosure forms to assist and support the chancellor in making those findings.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     Kimberly and Trey married in 2004 and separated in December 2015. No children were born of the marriage. In January 2016, Kimberly filed for divorce from Trey on the grounds of habitual cruel and inhuman treatment, excessive drug use, habitual drunkenness, or, alternatively, irreconcilable differences. Kimberly requested Trey continue to be restrained from threatening and harassing her under an order similar to an already-issued Justice Court Domestic Abuse Protective Order. The complaint was properly served on Trey on January 21, 2016, along with a Mississippi Rule of Civil Procedure 81 summons to appear at the hearing on February 3, 2016.

¶4.     On that date, the trial was continued until March 2, 2016. The protection order was extended as well. On February 19, 2016, Trey answered the complaint through counsel. The March 2 trial was continued again. On June 28, 2016, another summons was issued for Trey

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

to appear at the trial, which was reset for August 8, 2016. Trey was served with the summons on July 7, 2016. Trey's attorney moved to withdraw because Trey "failed to obey the requests of [his] attorney." The motion to withdraw was granted.

¶5.    On August 8, 2016, an order was entered continuing the trial until September 21, 2016.[2] Trey was properly served with a summons on September 11, 2016, but he failed to appear at the trial.[3] Testifying at the trial on September 21 were Kimberly and Trey's parents. At the end of the witness's testimony, the chancellor granted Kimberly a divorce on the ground of habitual drunkenness without further comment.

¶6.    On October 4, 2016, the judgment of divorce was entered, as well as a qualified-domestic-relations order (QDRO), dividing Trey's retirement benefits from his roofing business. The chancellor explained that he distributed the marital property based upon lists presented to the court as exhibits that were signed by Trey's parents,[4] but the record is void of analysis of the *Ferguson* factors. Kimberly was awarded $52,500 of Trey's employee pension plan. Trey was also ordered to pay $17,259.87 in credit-card debt and permanently restrained from having any contact with Kimberly.

¶7.    On October 24, 2016, an appearance form was entered for Trey's new attorney, along

---

[2] Both the trial transcript and the judgment of divorce inaccurately state that the trial was held on August 21, 2016, which was a Sunday. Trey explains in his appellate-reply brief that he moved the chancery court to correct this clerical error, which was so ordered.

[3] Trey offers no reason for his failure to appear.

[4] These exhibits were not included in the record.

3

with a motion for an extension to appeal and relief under Mississippi Rule of Civil Procedure 59. The extension was granted, and Trey timely filed his notice of appeal.

## STANDARD OF REVIEW

¶8. The scope of review in domestic cases is limited to the substantial evidence rule. *Jundoosing v. Jundoosing*, 826 So. 2d 85, 88 (¶10) (Miss. 2002). The findings of the chancellor will be upheld unless those findings were manifestly wrong or clearly erroneous. *Id.* However, this Court will not hesitate to reverse if the chancellor's decision is manifestly wrong, or the court applied an erroneous legal standard. *Owen v. Owen*, 928 So. 2d 156, 160 (¶11) (Miss. 2006).

## ANALYSIS

### I.     Divorce Based upon Habitual Drunkenness

¶9. Trey claims the chancery court erred in granting Kimberly a divorce on the ground of habitual drunkenness because the chancellor did not make specific findings of fact and conclusions of law. He also argues that Kimberly did not meet her burden of proving habitual drunkenness.

¶10. Habitual drunkenness is a fault-based ground for divorce provided by Mississippi Code Annotated section 93-5-1 (Rev. 2013). Similar to the ground of excessive drug use, to receive a divorce, the "plaintiff should prove that the defendant was habitually, or frequently, drunk, that the drinking adversely affected the marriage, and that the habit continued at the time of the divorce trial." Deborah H. Bell, *Bell on Mississippi Family Law*

4

§ 4.02[6] (2005); *see Sproles v. Sproles*, 782 So. 2d 746, 747-48 (¶20) (Miss. 2001). The chancery court sits as the trier of fact and "has the primary authority and responsibility to assess the credibility of the witnesses." *Sproles*, 782 So. 2d at 746 (¶12).

¶11. Although not specifically raised as a point of error by Trey, there was no error in the chancellor's proceeding with the trial in Trey's absence because Trey had been properly served with notice. Kimberly was still required, however, to prove the alleged ground, even in the absence of a defense by Trey. *See Turner v. Turner*, 73 So. 3d 576, 583 (¶30) (Miss. Ct. App. 2011) (citing *Lindsey v. Lindsey*, 818 So. 2d 1191, 1194 (¶13) (Miss. 2002)). "If that is done, the chancellor has authority to grant the divorce despite the absence of the defendant." *Carlisle v. Carlisle*, 11 So. 3d 142, 145 (¶12) (Miss. Ct. App. 2009) (quoting *Stinson v. Stinson*, 738 So. 2d 1259, 1263 (¶15) (Miss. Ct. App. 1999)).

¶12. Although Trey is correct that the chancellor failed to make specific findings of fact or conclusions of law regarding the grant of divorce based on habitual drunkenness, we do not find error. Trey failed to make any motion or complaint before the chancery court raising this issue. "A divorce judgment entered when a party fails to appear is 'a special kind of default judgment.'" *Lee v. Lee*, 78 So. 3d 326, 328 (¶7) (Miss. 2012) (quoting *Mayoza v. Mayoza*, 526 So. 2d 547, 548 (Miss. 1988)). In order to obtain relief from such a judgment, absent parties must raise any requests or objections in a post-trial motion under Mississippi Rule of Civil Procedure 52, 59, or 60. *Id.* Although the "absent party" in *Lee* did not even file an answer, as Trey did, the same principles apply. Trey could have filed a motion to

5

make or amend findings of fact under Mississippi Rule of Civil Procedure 52 and Mississippi Rule of Chancery Court 4.01, but he failed to do so. Further, Trey did not file a Rule 59 motion for a new trial or to alter or amend the judgment, or a Rule 60 motion for relief from judgment under the Mississippi Rules of Civil Procedure. The record is void of any attempt by Trey before, during, or after the judgment of divorce to request findings of fact regarding the grounds for divorce. Accordingly, we cannot find the chancery court erred in failing to make such findings when Trey did not request them.[5]

¶13.   Although the chancellor made no specific findings of fact, there was sufficient evidence provided at the trial in the form of testimony from Kimberly and Trey's parents to prove habitual drunkenness. Kimberly testified that during the last year of their marriage, while they were living in Boca Raton, Florida, Trey was drinking "a lot." She also related times when Trey discontinued drinking and had severe alcohol withdrawal symptoms, such as seizures and tremors. During one drinking-related incident in March 2015, Trey threw Kimberly against a wall and threatened to kill her and the dog, but she ran to the neighbors' home and spent the night. During another incident, Trey had a wreck and was charged with "enhanced DUI." After the wreck he could not find his vehicle and did not even know the county in which the incident occurred. After using Kimberly's vehicle to search for his

---

[5] Trey responds that "there is no proof he received the judgment timely" in order to file a post-trial motion within the ten-day deadline. However, there is no proof that he did not receive a copy of the judgment within ten days of its entry. This argument is without merit.

6

truck, Trey came home drunk, carrying a bottle of vodka behind his arms. During this period, Kimberly described him as "out of control." She and a friend tried to "get him some help." They took him to a physician who told Trey "he needed to go to rehab"; however, Trey continued to drink. Kimberly left him when he became verbally and physically abusive.

¶14. Kimberly testified that Trey's parents and uncle attempted an intervention in Florida, but "it did not go well." Another time, Kimberly and her best friend arranged for Trey to attend a rehabilitation and detoxification facility. Trey agreed to go, but then he refused to stay. He called a taxi-cab and stopped by a liquor store on the way home. Trey agreed to return but again did not stay. He came home drunk, telling Kimberly he bought a car on her credit card. He never returned to rehab, and his parents brought him home to Mississippi from Florida.

¶15. Kimberly also moved back to Mississippi. She testified Trey continued to drink and take prescription narcotics. After he threatened to kill her, Kimberly obtained a protective order against him; however, Trey violated the order and was arrested. She described him during this time as "erratic and scary." Kimberly was able to testify that Trey was still drinking at the time of trial because recently he had been calling her friends in the early morning hours leaving incomprehensible messages.

¶16. Trey's father, Edward Speights Jr. (Edward Jr.), testified that Trey had been suffering from an "alcohol addiction" for the past two years, and was currently suffering from it. Trey lived in a camp house next to their home. Edward Jr. corroborated Kimberly's testimony

7

about the family's intervention attempts. Edward Jr. confirmed Trey was "incapable of functioning." He did not know if Trey would ever again be agreeable to any sort of alcohol-addiction treatment. Trey's mother testified that she agreed with everything Edward Jr. stated.

¶17. This testimony was sufficient evidence to grant Kimberly a divorce on the ground of habitual drunkenness. It showed Trey's alcohol consumption was frequent, negatively impacted the marriage, and continued until the time of trial. Furthermore, the chancellor, as the trier of fact, was in the best position to determine the credibility of the witnesses. *See Bowen v. Bowen*, 982 So. 2d 385, 395 (¶42) (Miss. 2008). The chancery court did not err in this regard.

## II. Trey's Parents as "De Facto Attorneys"

¶18. Trey argues that the chancery court erred in allowing his parents to act as his "de facto" attorneys during the trial for the division of marital assets, violating his due-process rights. He accurately asserts that his parents are not qualified to practice law under Mississippi Code Annotated sections 73-3-2(2) or 73-3-31 (Rev. 2017), nor has he executed a power of attorney giving them such authority. For this reason, he claims the case should be reversed and remanded.

¶19. Trey's complaint is based upon lists of personal-property compiled by his parents that were to be attached to the judgment. At trial during the discussion of property division, since Trey was not present, Kimberly's attorney, Christopher Farris, confirmed that he had

8

"discussed" with Trey's parents "a division of the marital estate." Farris then proceeded to discuss the details of the division. He mentioned handwritten lists of personal property which would be attached to the judgment as exhibits.[6] The judgment also stated the personal-property distribution was "based off of lists presented to the court as Exhibits 1 and 2" signed by Kimberly and Trey's parents.

¶20. Trey's parents were present and participated in the trial as witnesses, but we do not find the chancery court improperly allowed Trey's parents to exercise authority over the property distribution, or that they acted as "de facto attorneys." Trey's parents did not "negotiate" the distribution of property, as Trey now contends. In fact, Trey's parents did not offer any testimony regarding the property distribution, only the lists offered through Kimberly's counsel. Trey's absence indicates he was either incapable or uninterested in participating in the trial, or he would have been present. In lieu of having absolutely no say in the property distribution, Trey's parents stepped forward and created lists of property belonging to each party to expedite the process. This issue is without merit.

### III.    Rule 8.05 Financial Disclosures

¶21. Trey contends that it was error for the chancellor to attempt to distribute the marital estate without requiring both parties to file financial disclosure forms under Uniform Chancery Court Rule 8.05. Trey contends that because of this failure, there was no information upon which the court could make a determination of marital and nonmarital

---

[6] These exhibits were not attached to the judgment or made a part of the record.

9

assets, and a subsequent equitable division of the marital assets. We agree.

¶22. Rule 8.05 requires "each party in every domestic case involving economic issues and/or property division" to provide a "detailed written statement of actual income and expenses and assets and liabilities." The parties must submit their income-tax returns for the preceding year and a general statement of employment history and earnings from the inception of the marriage or from the date of divorce, depending on the type of action. The rule also states that financial statements are not necessary if excused by court order for good cause shown. "It is vital to the effective administration of justice in the domestic relations arena that chancellors undertake this task while in possession of accurate financial information." *Trim v. Trim*, 33 So. 3d 471, 478 (¶16) (Miss. 2010).

¶23. At trial, no mention was made of Rule 8.05 forms. In her appellate brief, Kimberly states that the issue is without merit "because the parties had already exchanged financial affidavits during the discovery process." Yet, no Rule 8.05 forms are in the record, and there is no indication on the chancery-court docket that any financial forms were exchanged, filed, or excused. However, Trey does not suggest, and we do not find, that there was any fraudulent intent by either party in failing to comply with this rule.

¶24. Citing *Luse v. Luse*, 992 So. 2d 659 (Miss. Ct. App. 2008), Kimberly argues that this issue is waived since Trey did not appear at the proceedings. We disagree. In *Luse*, the appellant, John Luse, argued that the chancery court erred in failing to require the parties to file Rule 8.05 statements; therefore, there was no documentation in the record regarding

ownership of the property or any evidence justifying the court's division of property. *Luse*, 992 So. 2d at 664 (¶16). The chancellor had stated in her findings that because child support and alimony were not at issue, and John failed to appear, the chancery court waived the Rule 8.05 disclosures. *Id.* at (¶19). This Court found no error in that regard, and that John, in failing to defend the suit in the chancery court, was attempting to do so on appeal, which was improper. *Id.* at (¶¶18-19).

¶25. However, *Luse* is distinguishable. While John "never responded to the complaint or entered an appearance in the court," here, Trey took the actions of hiring counsel and timely answered the complaint, but he did not appear further. *Id.* at 660 (¶3). Therefore, we cannot say that Trey waived this issue. Because we are reversing and remanding on the property division, as explained below, on remand the chancery court should require both parties to complete and file Rule 8.05 financial forms.

### IV. Property Division

¶26. Trey contends that the chancery court erred in failing to make findings of fact regarding the equitable distribution of the marital property under the *Ferguson* factors. We agree.

¶27. "To equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets [based upon the *Ferguson* factors]." *Anderson v. Anderson*, 174 So. 3d 925, 929 (¶8) (Miss. Ct. App. 2015). Although the chancellor need not evaluate every *Ferguson* factor, the chancellor

11

must consider the factors relevant to the case, on the record, in every case. *Sproles*, 782 So. 2d at 748 (¶25); *Heimert v. Heimert*, 101 So. 3d 181, 187 (¶24) (Miss. Ct. App. 2012) (citing *Lowrey v. Lowrey*, 25 So. 3d 274, 280 (¶7) (Miss. 2009)). The policy consideration behind this requirement is "not only essential for appellate purposes," but to provide trial courts "a checklist to assist in the accuracy of their rulings . . . [and to] reduce[] unintended errors that may affect the court's ultimate decision. The absence of an analysis of these factors and failure to apply the law to the facts at hand create error." *Id.*

¶28.    Trey is correct that there were no findings of fact by the chancery court regarding the distribution of marital assets. There was no discussion about which assets were marital, and the record is devoid of any mention of the *Ferguson* factors. Kimberly argues that these findings were not necessary because Trey did not appear, citing *Luse* in support. Again, we find *Luse* distinguishable because Trey actually did answer the complaint and denied Kimberly's allegations regarding accumulation and division of marital property. Although the court was entitled to proceed with trial because Trey did not appear, the court was still required to make the necessary findings for the property distribution.

**CONCLUSION**

¶29.    We affirm the grant of divorce to Kimberly on the ground of habitual drunkenness. However, we reverse and remand on the issue of property distribution, in order for the parties to file Rule 8.05 financial disclosures, and for the chancellor to make specific findings of fact and conclusions of law consistent with *Ferguson*.

12

¶30.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., GRIFFIS, P.J., CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.   IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.   GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**