# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01349-COA

**REGENA CONTAI BURTON**                                                  **APPELLANT**

**v.**

**PADRICK DONNELL MYERS**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2024 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ELIZABETH L. PORTER |
| | MAGGIE CLAIRE MONROE |
| ATTORNEY FOR APPELLEE: | NICHOLAS ANTHONY SAKALARIOS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 03/24/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., EMFINGER AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1.     Regena Burton appeals from a final judgment of the Chancery Court of Jefferson Davis County granting her a divorce based on irreconcilable differences and awarding her ex-husband, Padrick Myers, fifty percent of the value of the marital home as lump sum alimony. Regena raises five points of error on appeal, all of which relate to the chancellor's division of the marital home. Specifically, she contends that the chancellor erred as a matter of law by failing to conduct a proper *Ferguson*[1] or *Armstrong*[2] analysis before dividing the

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993).

marital property, by failing to consider the parties' Uniform Chancery Court Rule 8.05 financial disclosures, and by denying her post-trial motions. We agree. Accordingly, we reverse and remand on the issue of property division so that the chancery court can make the appropriate findings of fact under *Ferguson*.

## FACTS AND PROCEDURAL HISTORY

¶2.     Padrick Myers and Regena Burton began living together in 2008 and were married one year later.[3] They had their only child, a daughter, in 2018. Throughout their entire relationship and marriage, the parties resided at 47 Graves Keys Road in Bassfield, a home Regena and her two siblings had inherited from their mother in 2001. In 2023, after fourteen years of marriage, Padrick filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment, uncondoned adultery, or, in the alternative, irreconcilable differences. In his complaint, Padrick also requested that the chancery court "make an equitable distribution" of all the property acquired during the marriage. In her answer, Regena denied any adultery, asserted the various affirmative defenses available to her under Mississippi Rule of Civil Procedure 12(b)(6), and claimed Padrick came to court with "unclean hands."

¶3.     As discovery progressed, the parties exchanged financial disclosures in accordance with Uniform Chancery Court Rule 8.05, and the case proceeded to trial. At trial, Padrick and Regena provided extensive testimony regarding the couple's marital home (at 47 Graves

---

[3] The parties agree that they married in Jamaica in 2009, but no marriage license was ever filed in Mississippi. At trial, Regena's counsel abandoned any challenge to the validity of the divorce.

Keys Road). Although the parties' testimony greatly conflicted, it revealed that they made significant improvements to their home during their marriage, and those improvements substantially increased the home's value. They went on to say that they obtained loans from various sources to finance the home's renovations, but they disputed which party incurred the financial burden of paying back the loans. Regena and Padrick also claimed they made purchases from their individual accounts to obtain material and supplies for the renovations.

¶4. Essentially, Padrick claimed the home should be considered marital property subject to equitable division under *Ferguson* because he and Regena contributed equally to the home's improvement. On the other hand, Regena argued the home was her separate property and contended that she incurred the bulk of the financial burden in renovating the house. Outside of Regena and Padrick's testimony, no evidence was presented to support the alleged financial contributions of either party.

### A. Padrick's Testimony

¶5. Padrick testified that when he began residing at 47 Graves Keys Road in 2008, the home's original size was approximately 800 or 900 square feet and had a value of roughly $40,000 to $50,000. An appraisal of the home after all the renovations were completed was the only item submitted into evidence and revealed that the home had been expanded to a total of 3,500 square feet, with a current value of $245,000.

¶6. Padrick testified that he had never seen a property deed, but he always assumed Regena was the sole owner. Although he knew Regena inherited the home from her mother,

Regena told him that "her brother and sister gave it to her" so that she could live there and care for their aging mother. It was only after the renovations were complete and Padrick filed for divorce that he discovered Regena actually co-owned the home with her siblings.

¶7.     Padrick estimated that he and Regena spent a combined total of approximately $50,000 to $60,000 to complete the home's renovations but claimed that he was responsible for most of these expenses, including the loans used to construct a majority of the home. While Padrick did testify that he and Regena both signed for a home-improvement loan obtained from Central Sunbelt Credit Union and made payments on the loan through their joint marital account, he also claimed to have made several large purchases for the home using credit cards solely in his name. These purchases included two new water heaters, replacement ductwork, and the expense of converting the home to propane gas.

¶8.     Additionally, he claimed to have spent $9,700 on roof shingles, $7,000 on a central air unit, and to have obtained a $12,000 loan from Sunlight Financial to purchase new windows. Padrick also testified that he had yet to pay off the loan for the windows and continued to make monthly payments on it. Padrick denied receiving any sort of reimbursement from Regena to cover these costs.

### B.     Regena's Testimony

¶9.     Similar to Padrick, Regena asserted that she incurred the lion's share of the financial burden while renovating the home. She also testified that the couple had borrowed roughly $50,000 to $60,000 from various sources to finance the renovations, claiming that Padrick

was only responsible for a portion of that debt and that she repaid the rest. She testified that Padrick had taken out only one loan for $15,000, and she claimed that she had taken about four loans to cover the remainder of the costs of the renovation.

¶10.    Moreover, Regena contested several of Padrick's claimed expenses. For instance, she alleged that Padrick put the new windows in the home as "a gift to [her]" and that she repaid Padrick for a portion of the windows' cost. Regena also claimed to have given Padrick $9,000 and to have given Padrick "the cash" to purchase the central air unit. She also denied that she and Padrick ever owned a joint checking account during the marriage.

### C.    Bench Ruling

¶11.    Following the conclusion of witness testimony, the chancellor issued a bench ruling and decided the issues of child custody and support, visitation, and the equitable division of the marital home. The chancellor began by stating that the case presented "sort of a strange situation" and noted that the court lacked Rule 8.05 disclosures from both parties. The chancellor continued by stating that the court lacked "any documents on the money spent on the home [and lacked] any income or expense documents." After performing an in-depth *Albright*[4] analysis, the chancellor awarded the parties joint legal custody of their daughter and granted Regena "primary physical custody." No child support was awarded.

¶12.    The chancellor also found that the home at 47 Graves Keys Road was a marital asset subject to equitable division and awarded Padrick a fifty-percent interest in the home in lieu

---

    [4] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

5

of lump sum alimony. The chancellor reasoned that the home had been "treated as a marital asset" since the parties married, that their daughter had been born there, and that Padrick had spent money on the improvement of the house and had taken care of "all the necessary bills of the home." Despite awarding Padrick a fifty-percent interest in the marital home, the chancellor noted potential issues with his ruling, such as the fact that Regena's two siblings were co-owners of the home. The chancellor stated:

> I don't know how its going to shake out but I'm going to award [Padrick] a 50 percent interest in the marital home. I don't know how that's going to happen or take place since you've got two other people who are owners evidently, who are on the deed and never stayed there since this married couple have been there. I will let them worry about that.

¶13. After issuing the bench ruling, the chancellor requested Padrick's counsel prepare a written order consistent with the ruling. Both parties subsequently signed off on the order, and a final judgment of divorce was entered on July 16, 2024. Ten days later, Regena filed a motion for specific findings of fact and conclusions of law, a motion to alter or amend the judgment, and, in the alternative, a motion for a new trial. The chancellor denied Regena's post-trial motion, noting that the transcript of the bench ruling contained "sufficient findings of fact and conclusion of law . . . to negate the need for a separate finding[,]" and the chancellor decided that a new trial was not warranted.

¶14. However, the court did note that the final judgment entered on July 16, 2024, deviated "significantly" from the bench opinion. Consequently, the court issued an amended final judgment in October 2024. Some of the differences in the bench opinion and July 16 written

6

judgment dealt with child custody and support, which are not at issue on appeal and will not be discussed.

¶15.    One variation between the bench opinion and July 16 judgment particularly relevant to this appeal is the July 16 judgment ordered Regena to "quitclaim Padrick one-half (50%) *of her interest* in [the] marital domicile," while the previous bench ruling awarded Padrick "a fifty percent interest in the marital home." (Emphasis added). However, the amended final judgment, issued in October 2024, awarded Padrick "one half of the value of the marital home, *less the value of the original home which Regena*, her brother and her sister inherited from their mother." (Emphasis added). The chancellor also required that Regena calculate the specific dollar amount Padrick was to receive within ninety days and ordered that Regena pay the entire award to Padrick within 180 days. The amended final judgment concluded that Padrick's interest in the marital home was to be "considered a lump sum alimony award due to the legal limitations of simply dividing the property." Following the amended final judgment in October 2024, Regena filed the instant appeal.

¶16.    On appeal, Regena raises five points she claims require reversal, all of which center on the chancellor's division of the marital home. First, she claims that the chancery court erred as a matter of law by failing to conduct a proper *Ferguson* analysis before awarding Padrick a fifty-percent interest in the marital home. Second, she argues that the chancellor erred as a matter of law by failing to conduct a proper *Armstrong* analysis before awarding Padrick the fifty-percent interest in the home as lump sum alimony. Third, Regena claims

that the chancellor erred by failing to consider the parties' Rule 8.05 financial disclosures. Regena's final two arguments relate to the denial of her post-trial motions.

¶17.    However, we need not address Burton's claims regarding her post-trial motions because we reverse and remand the division of the marital home due to the chancellor's failure to perform a proper *Ferguson* analysis.

## ANALYSIS

### I.    Equitable Division of Property

¶18.    Regena argues the chancellor erred on the issue of property division and that reversal is required because the chancellor found the home to be marital property but conducted no on-the-record *Ferguson* analysis. She further asserts that *Ferguson* provides Mississippi's mandatory framework for the equitable distribution of marital property and argues that the chancellor failed to consider the *Ferguson* factors applicable to the instant case. We agree with Regena and find that the chancellor failed to conduct the required on-the-record *Ferguson* analysis and did not address all the applicable *Ferguson* factors.

¶19.    "This Court employs a limited standard of review of property division and distribution in divorce cases." *Parrish v. Parrish*, 245 So. 3d 519, 522 (¶5) (Miss. Ct. App. 2017). This is because "[t]he chancery court has substantial discretion as to the distribution of property in a divorce." *Brown v. Brown*, 350 So. 3d 1169, 1178 (¶29) (Miss. Ct. App. 2022). Further, "[t]he chancellor's distribution of the marital assets will be affirmed as long as it is supported by substantial credible evidence." *Parrish*, 245 So. 3d at 522 (¶6) (quotation marks omitted).

8

However, the appellate courts have not hesitated to reverse chancellors who fail to apply the *Ferguson* factors and make the requisite findings of fact and conclusions of law as required by this Court." *Thompson v. Thompson*, 380 So. 3d 945, 951 (¶24) (Miss. Ct. App. 2024).

¶20.    In order to "equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets based upon the *Ferguson* factors." *Speights v. Speights*, 270 So. 3d 968, 975 (¶27) (Miss. Ct. App. 2018). Moreover, "[t]he applicable *Ferguson* factors must be considered on the record in every case." *Thompson*, 380 So. 3d at 953 (¶31). The *Ferguson* factors include:

(1) substantial contribution to the accumulation of property;

(2) degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise;

(3) the market value and emotional value of assets subject to distribution;

(4) value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

(5) tax or other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6) extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

(7) needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and

(8) any other factor which in equity should be considered.

9

*See Begnaud v. Begnaud*, 409 So. 3d 604, 612 (¶27) (Miss. Ct. App. 2025).

¶21.    The chancellor is not required to evaluate every *Ferguson* factor in every case, instead "the chancellor must consider the factors relevant to the case, on the record, in every case." *Speights*, 270 So. 3d at 975 (¶27). Stated differently, a "chancellor's failure to consider all applicable *Ferguson* factors is error and mandates reversal." *Thompson*, 380 So. 3d at 954 (¶32).

¶22.    Lastly, when applying *Ferguson* in dividing marital property, "chancellors must support their decisions . . . with findings of fact and conclusions of law, and a chancellor's failure to do so requires reversal and remand." *Id.* at (¶33).

¶23.    Here, we find that the chancellor failed to comply with the three required steps to equitably divide the property. Although the chancellor classified the home at 47 Graves Keys Road as marital property and determined the property's value using the appraisal submitted into evidence, the chancellor failed to comply with the final step in the property distribution process: the requirement that a chancellor consider all applicable *Ferguson* factors before equitably dividing the home. Accordingly, we find the chancellor's failure to consider all the applicable *Ferguson* factors and make findings of fact and conclusions of law on these factors constitutes reversible error. *Id.* While the chancellor considered each party's contributions to and expenditures on the property (factors 1 and 2) and ordered the property division as a form of lump sum alimony (factor 6), he failed to consider *all* the applicable factors.

¶24. Specifically, we note that the chancellor failed to consider the tax or economic consequences of the property's division (factor 5). For example, the amended final judgment required Regena to pay Padrick one-half the value of the marital home, less the value of the original home Regena and her siblings inherited from their mother," within 180 days of the order's entry. However, as the chancellor pointed out multiple times, the court lacked either party's financial disclosure and therefore failed to consider Regena's ability to pay such an award or the tax consequences for Padrick in receiving such an award.

¶25. Additionally, the chancellor failed to consider the tax and economic consequences to Regena's siblings, both of whom owned the property with her. The chancellor even noted his failure to consider third parties in the bench opinion, saying:

> I don't know how its going to shake out but I'm going to award [Padrick] a 50 percent interest in the marital home. I don't know how that's going to happen or take place since you've got two other people who are owners evidently, who are on the deed and never stayed there since this married couple have been there. I will let them worry about that.

¶26. Here, the chancellor wholly failed to consider the tax or economic consequences of the property's division and as previously stated, a "chancellor's failure to consider all applicable *Ferguson* factors is error and mandates reversal." *Id.* at 954 (¶32). The chancellor also failed to consider the emotional value of the property and adequately assess whether Regena's inherited interest in the property should have been excluded or considered only partially marital in the home in violation of *Ferguson* factors 3 and 4.

¶27. Accordingly, we reverse the judgment and remand for the division of property so the

11

chancellor can "apply the [applicable] *Ferguson* factors and make the requisite findings of fact and conclusions of law as required by this Court." *Id.* at 951 (¶24).

## II.     Alimony Award

¶28.    Regena also argues that the chancellor erred as a matter of law by failing to conduct a proper *Armstrong* analysis before awarding Padrick the fifty-percent interest in the home as lump sum alimony. She further contends that the lump sum alimony award was based "solely on an arbitrary estimate" of the parties' income and unsupported by any "findings regarding the parties' financial conditions, needs, or ability to pay." However, we need not address the merits of her argument because, as discussed *supra*, the chancellor's failure to apply *Ferguson* when equitably dividing the marital property mandates reversal.

¶29.    "[W]hen we reverse a court's division of marital property, we must also reverse any accompanying award or denial of alimony." *Faerber v. Faerber*, 13 So. 3d 853, 863 (¶39) (Miss. Ct. App. 2009). Additionally, "all property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together." *Thompson*, 380 So. 3d at 958 (¶49) (quoting *Lauro v. Lauro*, 847 So. 2d 843, 848-49 (¶13) (Miss. 2003)).

¶30.    Because we are reversing the "court's division of marital property," the other financial awards—such as Padrick's lump sum alimony award—must also be reversed and remanded to allow the chancellor to consider the issue of alimony in conjunction with the division of marital property. *Faerber*, 13 So. 3d at 863 (¶39).

12

¶31. Although we are reversing the award of lump sum alimony, we note that "a fixed sum of money" is a critical characteristic of lump sum alimony. *Creekmore v. Creekmore*, 651 So. 2d 513, 518 (Miss. 1995); *see West v. West*, 891 So. 2d 203, 212 (¶22) (Miss. 2004). Here, the chancellor awarded Padrick "one half of the value of the marital home, *less the value of the original home* which Regena, her brother and her sister inherited from their mother," as a form of lump sum alimony. However, it is unclear whether the chancellor intended the phrase "less the value of the original home" to mean the value of the home in 2001 or the value of the home in 2009 prior to any renovations. It is also unclear whether the chancellor intended for the award to include only the structure of the home itself, or whether he intended the entire value of the home and property to be subtracted from the home's current value.

¶32. On remand, the chancellor should take special care to clearly articulate the specific equation and property values used to determine alimony if such an award is to be made.

### III. Rule 8.05 Financial Disclosures

¶33. Regena claims that the chancellor erred by failing to consider the parties' Rule 8.05 financial disclosures or admit them into evidence before attempting to distribute the marital estate. Regena further argues that the chancellor was required to consider the parties' financial statements and without such consideration the chancellor lacked the factual foundation to properly classify the parties' assets, assess liabilities, distinguish between marital or non-marital property, and to subsequently conduct the equitable division of the marital home. Although Padrick acknowledges that Rule 8.05 requires the chancellor in

13

domestic cases involving economic issues to consider the parties' financial statements, he contends this requirement was excused by the court.

¶34. Uniform Chancery Court Rule 8.05 states, "[U]nless excused by order of the court, or unless waived by either or both parties and allowed by the court, each party in every domestic case involving economic issues and/or property division shall provide the opposite party or counsel, if known, the following disclosures . . . ." UCCR 8.05. Stated differently, the rule requires "each party in every domestic case involving economic issues and/or property division to provide a detailed written statement of actual income and expenses and assets and liabilities." *Speights*, 270 So. 3d at 974 (¶22). This exchange of information is "vital to the effective administration of justice in the domestic relations arena[,]" as chancellors need accurate financial information before reaching decisions on economic issues and/or property division. *Id.*

¶35. However, such financial disclosures "are not necessary if excused by court order for good cause shown." *Id.* For example, in *Luse v. Luse*, 992 So. 2d 659, 660 (¶3) (Miss. Ct. App. 2008), the chancellor waived the required Rule 8.05 disclosures because the appellant "never responded to the complaint or entered an appearance in the court." *Speights*, 270 So. 3d at 975 (¶¶24-25) (citing *Luse*, 992 So. 2d at 660 (¶3)).

¶36. Padrick urges this Court to assume the chancellor excused the Rule 8.05 requirement since the chancellor awarded him lump sum alimony and because financial disclosures were not mentioned in the record. However, we find his argument unpersuasive, especially since

14

the chancellor consistently commented on the lack of financial disclosures, noting their absence in the bench opinion, July 16 final judgment, and the October 2024 amended final judgment.

¶37. Despite the chancellor's statements, the record reflects that the parties filed unredacted Rule 8.05 disclosures in July 2023. However, we note that neither party corrected the chancellor when he incorrectly commented that the Rule 8.05 disclosures were unavailable to him. Moreover, neither party requested that the chancellor take judicial notice of their filed Rule 8.05 disclosures, nor did either party submit their Rule 8.05 disclosures as an exhibit at trial. It is the duty of the parties to timely file a certificate of compliance and supplement Rule 8.05 disclosures in order to provide the court with adequate evidence to "render decisions in accordance with the law." *Davis v. Davis*, 361 So. 3d 725, 740 (¶50) (Miss. Ct. App. 2023). On remand, the chancellor shall reopen the case and require the Rule 8.05 disclosures be submitted into evidence, insofar as they affect his decisions on the equitable division of property and award of alimony. *See Univ. Computer Servs. Inc. v. Lyall*, 464 So. 2d 69, 74 (Miss. 1985) ("It is well established that a chancery court has the authority to reopen a case for additional proof.").

## CONCLUSION

¶38. We reverse the chancellor's division of marital property and award of lump-sum alimony and remand for consideration of all applicable *Ferguson* factors and for consideration of the parties' Rule 8.05 disclosures if properly submitted into evidence.

15

Because we reverse and remand, it is unnecessary to discuss Regena's issues related to her post-trial motions.

¶39. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**